CASE 36.—PROCEEDINGS TO DISBAR W. H. BECKNER, AN
    ATTORNEY AT LAW.—June 25.

## Beckner v. Commonwealth

Appeal from Clark Circuit Court.

W. O. HARRIS, Special Judge.

From a judgment suspending him from practice
for two years, he appeals. —Reversed.

Attorney and Client—Suspension of Attorney—Making False Af-
    fidavit.—An attorney at law who voluntarily made a false
    affidavit to be used in a judicial proceeding in which he was
    not acting as attorney could not be suspended from practice
    for that reason, since he was absolutely privileged to the same
    extent as any other witness from any punishment except a
    criminal prosecution for perjury.

WILLIAM LINDSAY, LEWIS APPERSON, McQUOWN &
BROWN, JOUETT, BYRD & JOUETT, LUCIEN BECKNER and
W. M. BECKNER for appellant.

GEORGE B. NELSON, N. B. HAYS, Attorney General, D. L.
PENDLETON and CHAS. H. MORRIS for Commonwealth.

OPINION OF THE COURT BY JUDGE BARKER—Revers-
ing.

This is a proceeding commenced in the Clark circuit
court to disbar the appellant, an attorney, from prac-
ticing law in the state of Kentucky. It is based upon
the following facts: In an action between Thomas G.
Stuart and Archer Harman, in the Clark circuit
court, Stuart obtained a judgment for a large sum of

money against Harman. Harman left the State and
engaged in business in various parts of the world, and
is reputed to have made a large fortune in South
America. He finally went to England, where Stuart
instituted an action against him on his judgment in
the Court of King's Bench, and sought by proceed-
ings there to enforce it and collect his debt. It seems
that under the law of England, if there be no reason
shown against it, the collection of a foreign judgment
may be enforced by a summary procedure. Harman
undertook to balk this procedure instituted by Stuart
against him by showing that the judgment had been
unfairly or fraudulently awarded against him in Ken-
tucky; or, in other words, that he had not had a fair
and impartial trial. When the case between Harman
and Stuart was pending in the Clarke circuit court,
the appellant, William M. Beckner, was of counsel
for Harman for at least a part of the time, and under-
stood the issues between the parties litigant, the
result of the trial, and the mode of procedure by
which the judgment was obtained. In order to induce
the Court of King's Bench to refuse to summarily
enforce the Kentucky judgment against him, Harman
obtained from Beckner the following affidavit to be
read as evidence in his behalf:

"I, William Morgan Beckner, of the city of Win-
chester, in the county of Clark, state of Kentucky, in
the United States of America, make oath and say as
follows: (1) I am an American citizen, resident in
the city and State aforesaid, am a lawyer by profes-
sion and have an office in said city. I am sixty-four
years of age past. (2) I have known plaintiff,
Thomas Goff Stuart, for a period of at least thirty-
five years past, and during all that time said Stuart
has been practically insolvent and hard pressed for

money, and has now no estate of any kind known to me. (3) That from 1884 to 1892, A. D., defendant Archer Harman was frequently in Clark county, Kentucky, as said Stuart well knew. That he was a partner in a large contracting firm which built many miles of the Kentucky Union Railroad, a line of railroad that ran through said county, and was in active charge of the construction of a large section of said road. (4) That said Stuart takes an actice interest in politics in the state of Kentucky. (5) That this cause was first decided by the regular judge of the circuit court of Clark county, Kentucky, in favor of defendant Harman. That said judge, who was a very able lawyer and judge, held that said Stuart was not a partner of defendant Harman in the land deal in controversy, and that the judgment of said circuit judge was reversed by the court of appeals of Kentucky on said question chiefly because of certain letters introduced by said Stuart, but which said Harman by reason of his absence had no opportunity to see so as to determine whether or not they were authentic. (6) That the special judge by whom the judgment relied on in this court was rendered is the nephew of a prominent politician in Kentucky, and himself takes an active interest in politics and belongs to the same party to which Stuart is a member. (7) That plaintiff Stuart in the suit wherein said judgment was rendered was represented by several lawyers of power and influence who were spurred on by a contract for a contingent fee. (8) The defendant Harman lived in so many places in the prosecution of his business as a contractor that his papers had become scattered, and he was himself too far away to be able to assist his counsel in preparing said cause for said trial. (9) That by reason of the undue influence of plaintiff

Stuart and his counsel and the absence of the defendant Harman from the United States and the state of Kentucky said defendant did not have a fair trial of said cause. William Morgan Beckner. Sworn to at Winchester, Kentucky, U. S. A., this 28th day of May, 1906. C. C. Page, Notary Public. Clark County, Kentucky.

"Before me, C. C. Page, Notary Public, Clark County. My commission expires October 8, 1908."

Upon the trial of this case below the court rendered a judgment finding appellant guilty as charged, and suspended him from the practice of his profession as a lawyer for a term of two years. From that judgment this appeal is prosecuted. The court's conclusion of the issue between the Commonwealth and appellant is thus stated: "The court's conclusion is that the affidavit in question in these proceedings was deliberately and cunningly drawn, so as to support a charge of fraud and unfairness in the trial of the case therein referred to, and that said charge was known to be wholly untrue by the affiant."

As we see it, the first question with which we are confronted is whether or not an attorney who is a witness in a judicial investigation may be prosecuted and punished for his testimony by such a procedure as we have before us. Appellant was not the attorney of Harman at the time he gave his affidavit. The action in which the testimony contained in the affidavit was to be used was pending in a judicial tribunal in England. Appellant was none the less a witness because his evidence was given voluntarily. We do not think it can be questioned that what one may be compelled by law to do he may do voluntarily. Suppose the appellant had been in England, and there summoned before the Court of King's Bench as

a witness for Harman, and had deposed substantially as is contained in the affidavit copied above, could he then have been disbarred in Kentucky for his testimony in England? Or suppose a commission had issued from the Court of King's Bench for the taking of his deposition in Clark county, and he had been summoned before the proper officer and required to testify, would he then have been subject to disbarment because of his testimony? If so, then it must be conceded that an attorney summoned as a witness stands in a different attitude with reference to responsibility for his testimony than any other witness. It seems to us that the public policy which shields a layman who is a witness from all punishment except criminal prosecution for perjury if he bears false witness protects an attorney at law, who is a witness, to the same extent.

In the case of Sebree v. Thompson (opinion rendered June 19, 1907) 103 S. W. 374, we held, in an opinion written for the court by Judge Lassing, that a witness is absolutely privileged from any punishment except a criminal prosecution for perjury by reason of his testimony given in court in a pending cause. In the opinion a great many authorities are reviewed, and the rule above stated clearly announced and fully maintained. The principle is rested upon the broad public policy that witnesses should not be harassed except by prosecution for perjury because of their testimony in court. It is not necessary to reproduce the reasoning of the opinion, or the authority cited to sustain it. We deem it sufficient to say that it is conclusive of the question under discussion. In the matter before us there was a cause pending in a court of justice, and one of the parties called on the defendant to testify upon the issue joined. The

party had a right to the testimony of the witness, and the latter had a right to give his testimony voluntarily without waiting for the process of the court to enforce it. This being true, the witness was not amenable to any other procedure or punishment except prosecution for the crime of perjury if he spoke falsely.

We deem it not inappropriate to say that there is nothing in this record that warrants any sort of adverse reflection upon the conduct of the learned trial judge who awarded the judgment against Harman, or the counsel who obtained it, or the Attorney General of the State, who is the relative of the trial judge referred to in the affidavit of appellant. All of these men are officers of this court, and are known to be incapable of striving for unworthy ends, or the practice of unworthy means. But this does not alter the principle that it is the policy of the law that a witness should go upon the witness stand untrammeled by the fear of prosecution by those who may be offended by or disappointed in his testimony.

For these reasons, the judgment is reversed, with directions to dismiss the proceeding against the appellant.