## Chesapeake & Ohio Railway Company v. Robbins.

### (Decided June 13, 1913.)

### Appeal from Bath Circuit Court.

1. Damages—Overflow From Obstruction of Creek—Negligence—Measure of Damages.—The claim of damages asserted by appellee for the overflow of her two lots and the buildings thereon, having resulted from the obstruction of the waters of two creeks by abutments, piers and embankments erected by appellant in bridging the streams, the structures admittedly being of a permanent character, and not negligently constructed, it was properly held by the trial court that the case was one in which but a single recovery could be had; the measure of damages being the difference in the vendible value of the real estate just before and immediately after its overflow.

2. Damages—Overflow From Obstruction of Creek—Right of Action for.—Although the bridge abutments, piers and embankments causing the overflow of appellee's lots were erected in 1906, as it was not reasonably apparent to an ordinarily prudent person at the time of their completion, that they would so obstruct the waters of the two creeks as to cause them to overflow the lots, the right of action therefor did not then arise, but accrued after

the overflow of the property in 1909, as it was not until the happening of that event that it became reasonably apparent to a person of ordinary prudence that the structures would cause injury to the property.

3.  Damages—Injury to Real Estate.—A party is not required to sue for damages to his real estate resulting from a permanent structure, until it becomes reasonably apparent that he has suffered such damages.


SHELBY & SHELBY, LEWIS APPERSON, R. L. NORTHCUTT and H. C. GUDGELL for appellant.

C. W. GOODPASTER, JNO. A. DOUGHERTY for appellee.


OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was brought by the appellee against the appellant to recover damages for the flooding of two houses and lots, owned by her, in the village of Salt Lick, caused, as alleged, by the acts of appellant in erecting concrete abutments and piers to support its brdges over Salt Lick and Mud Lick Creeks, and embankments approaching same, whereby the waters of the creeks were so obstructed and diverted from their natural channel and flow, as to make them back upon and overflow the property in question to its great injury. The trial resulted in a verdict awarding appellee $400 damages; and from the judgment entered thereon this appeal is prosecuted. The village of Salt Lick is situated in the Licking Valley, Bath County, not far from the Licking River which lies a mile or two north of it. Appellant's railroad runs through the valley and village crossing both Mud Lick and Salt Lick creeks before reaching the village; both streams being tributaries of the Licking River. Its bridge over Mud Lick is three quarters of a mile from appellee's property and the bridge over Salt Lick a half mile therefrom. In addition to these streams, there are two smaller streams near or in the village, known as Hog Branch and Dickerson's Branch. Prior to 1906, appellant's trains crossed Mud Lick and Salt Lick creeks upon trestles; in that year, however, iron or steel bridges were substituted for the trestles and these bridges had to be supported by concrete abutments and piers, which were erected on either side of and in the streams; and, in addition, fills were constructed at the ends of each of the bridges. The valley being low, the village, by reason of its situation in the angle formed by the two creeks, is

at times subject, in part, to overflow from the waters of those two streams, such overflows, however, were never known to reach appellee's property until the year 1909; but in February and again in April of that year, both lots were so covered by the high water from the creeks that it entered the houses thereon to a depth of eighteen or twenty inches, each time remaining therein several days. It was alleged in the petition that these inundations of appellee's property resulted from the obstruction and diversion of the waters of Mud Lick and Salt Lick creeks by the abutments, piers and embankments constructed by appellant in bridging these streams, which as to Mud Lick Creek reduced the space or water way from its former width of sixty feet to a narrower width of twenty-five feet; and as to Salt Lick, from its former width of two hundred feet to the narrower width of sixty-five feet, thereby so obstructing and preventing the flow of the waters of each creek as to cause them to back upon and overflow appellee's premises.

The answer of appellant simply traversed the averments of the petition. Appellee, by an amended petition, alleged in substance that at the time of the construction of the bridges, abutments, piers and embankments by appellant, it was not apparent to her or to any person of ordinary prudence residing in Salt Lick, that same would obstruct or divert the waters of the creeks and that this did not become apparent until the flood of 1909, nor could she before that time, by the exercise of the highest degree of care, have ascertained that the abutments, piers and embankments would obstruct or divert the waters of the creeks and cause them to overflow her premises.

It was also alleged in the amended petition that the floods of February and April, 1909 were caused by such rainfalls as might reasonably have been expected by appellant at the time of erecting the abutments, piers and embankments in question, and that similar rainfalls had frequently occurred before the erection of the abutments, piers and embankments.

Appellant by answer specifically denied the allegations of this amended petition; and the affirmative matter of a second amended petition making more definite certain allegations contained in the original and first amended petitions, it controverted by an order entered of record.

Without discussing in detail the evidence, it is sufficient to say that that introduced in appellee's behalf con-

duced to prove that no rainfall previous to the erection by appellant of the abutments, piers and embankments appurtenant to its bridges or indeed, previous to that of February, 1909, had ever caused the waters of the creeks to back upon and overflow her lots. Numerous witnesses testified that the erection of the abutments, piers and embankments appurtenant to the bridges on Mud Lick and Salt Lick creeks reduced the width of the waterway under each bridge to such an extent as to obstruct its flow. Some of the witnesses say at the Mud Lick Bridge the reduction was from a width of 60 to 25 feet and at the Salt Lick Bridge from 200 to 65 feet. Other witnesses do not make the reduction so great, but substantially all of them agree that it was sufficient, following heavy rains, to obstruct or divert the flow of the waters, of the creeks, and that it did so obstruct and cause them to back upon and overflow appellee's lots.

Several of these witnesses, among them McGrew, Shrout, Burnes, Green and North, testified that the rains of February and April, 1909, were not heavier than others they had known to occur at Salt Lick in previous years. According to the further statements of these witnesses, all of these similar previous rains occurred before the erection of appellant's bridges on Mud Lick and Salt Lick creeks, yet none of them caused the waters of the creek to overflow appellee's lots. Appellee's evidence also abundantly established the difference in the vendible or market value of her property before and after its overflow and that the depreciation in its value was and is greater in amount than fixed by the verdict.

On the other hand appellant's evidence conduced to show that the space for the passage of water was not less than 50 feet at Mud Lick Creek and not less than 80 feet at Salt Lick Creek; and that the space for the passage of water at each of the bridges is as great as before the bridges were constructed. This evidence was mainly furnished by expert witnesses, who professed to have reached their conclusions by measurements and calculations, and these witnesses also testified that the inundation of appellee's lots could not have resulted from any obstruction of the waters of the creeks at the bridges, but was caused by an unusual or extraordinary rainfall, and the overflowng of the waters of Hog and Dickerson branches.

Appellant's principle contentions are, that the verdict was flagrantly against the evidence; and that the trial

court erred in refusing to peremptorily direct a verdict for it, as requested at the conclusion of the evidence. It is patent from what we have said of the evidence that the first contention cannot be sustained. While the evidence was conflicting it was the province of the jury to give the greater weight to that of appellee's witnesses, and as this was evidently done by them the verdict cannot be disturbed on the ground that it was unauthorized by or was flagrantly against the evidence.

The complaint as to the court's refusal of the peremptory instruction rests upon two theories; first, that there was no evidence to support the verdict; second, that the petition as amended fails to state a cause of action. The first theory we have already disposed of in holding that the verdict is not flagrantly against the evidence. It is, however, insisted upon the second theory that as the abutments, piers and embankments, alleged to have caused the depreciation in the vendible value of appellee's property, are permanent structures and but one recovery can be had, the cause of action for the damages, if any, sustained by appellee, accrued upon their completion; the measure of recovery being the difference between the vendible or fair market value of the property just before it was known the structures would be made and such value immediately after they were completed; and that as the petition as amended does not in precise terms allege that the value of the property was at that particular time depreciated, appellee has no cause of action. It is true the case is one in which a single recovery must suffice, for the petition, as amended, alleges that the structures which caused the depreciation in value of appellee's property were and are permanent, and the pleadings as a whole showed it to be the purpose of both appellee and appellant to so treat them. Yet it is likewise true, and so alleged in the petition and amendments and shown by the appellee's evidence, that the fact that the erection of these structures depreciated the vendible value of her property could not by reasonable diligence have been known to her until the property was inundated by the flood of February, 1909, therefore, the right of action then accrued. In M., H. & E. R. R. Co. v. Thomas, &c., 148 Ky., 131, quoting from M., H. & E. R. R. Co. v. Graham, 147 Ky., 604, we in the opinion, said:

"In L. & N. R. R. Co. v. Orr, 91 Ky., 109, Hay v. City of Lexington, 114 Ky., 669, Richmond v. Gentry, 126 Ky., 319, and many similar cases, it was held that the struc-

ture being permanent and properly constructed a recovery once for all must be had. On the other hand in City of Louisville v. Coleman, 22 Ky. L. R., 64, Klosterman v. C. & O. Ry. Co., 22 R., 192, Finley v. Williamsburg, 24 R., 1338, and in a number of subsequent cases, it was held that recurring recoveries might be had where the structure was unlawfully or negligently built, and by reason of such unlawful or negligent construction injury was inflicted from time to time. In L. & N. R. R. Co. v. Cornelius, 111 Ky., 752, Childers v. L. & N. R. R. Co., 24 R., 275, Stith v. L. & N. R. R. Co., 109 Ky., 158, L. & N. R. R. Co. v. Clinton, 109 Ky., 180, M., H. & E. R. R. Co. v. Thomas, 140 Ky., 143, and in cases therein cited, it was held that there was a negligent construction of the railroad if the company built a fill and did not leave such openings as were reasonably sufficient for the escape of the water that a person of ordinary prudence should anticipate from the rainfalls and may be reasonably expected to occur. In addition to this there are cases where the trouble cannot be remedied at a reasonable expense; that is, where the cost of remedying it would be so great as to justify the railroad company in condemning the property and taking it under the power of eminent domain. In this character of cases there should be a recovery once for all. In building a railroad the company may do its work so as to deflect a stream from its course, but this may be necessary in the construction of the road. So it may be held that if the trouble may be remedied at a reasonable expense, it may be regarded as temporary; but if the trouble cannot be so remedied it should be regarded as permanent, and this is a question for the jury. (L. & N. R. R. Co. v. Whitsell, 125 Ky., 433; I. C. R. R. Co. v. Haines, 122 S. W., 211; L., H. & St. L. Ry. Co. v. Roberts, 144 Ky., 820). * * * There are also cases in which the parties have both treated the structure as permanent; and where they did this the court also so treated it. (C. & O. Ry. Co. v. Stein, 142 Ky., 520; M., H. & E. R. R. Co. v. Wier, 144 Ky., 206; Central Consumers Co. v. Pinkett, 122 Ky. 720),"

The instant case manifestlly belongs to the class of cases in which but one recovery is allowable. In I. C. R. R. Co., &c. v. Haines, 122 S. W., 210 (not appearing in Ky. Rep. or Law Rep.), we held that the rule that where an injury to the real estate results from the construction of a permanent structure, the cause of action accrues on the completion of the structure, was not applicable in a case presenting such facts as are here involved. In that case

the structure resulting in the injury complained of was completed more than five years before the institution of the action, but we held that the statute of limitations of five years did not apply, saying in the opinion:

"The assistant civil engineer of the railroad testified that, while the railroad was double tracked in 1900, it was several years thereafter before the creek overflowed the embankment and made a new channel through the Borrow pits. That being the case it is manifest that the facts of this case do not bring it within the rule laid down in that line of opinions holding that where an injury to real estate results from the construction of a permanent structure the cause of action accrues upon the completion of the structure. L. & N. R. R. Co. v. Orr, 91 Ky., 109; Hay v. City of Lexington, 114 Ky., 665; Johnson v. O. & N. R. Co., 18 R., 276; Oliver v. I. C. R. R. Co., 25 R., 235. In these cases the injury was apparent to a reasonably prudent man at the time of the completion of the structure. In the case at bar the double tracking of the railroad and the digging of the Borrow pits did not cause immediate injury to appellee's land. His land was not damaged until a few years thereafter when the creek overflowed the embankment and carried the new channel through the Borrow pit. A party is not required to sue for damages to his land until it is reasonably apparent that he has suffered damages. If appellee's cause of action had accrued in the year 1900 then he might have lost his right of action long before he, as a matter of fact, suffered any damages. The only material damages, if any to his land took place in 1906 and 1907. The action was brought in 1908. It is manifest, therefore, that there was no evidence to justify the giving of an instruction based upon the statute of limitations."

In the instant case the instruction as to the measure of damages advised the jury in substance in the event they found for appellee, to allow her the difference between the fair vendible value of her lots immediately before it became generally known in that locality that such rainfalls as could reasonably be expected by prudent persons would produce such overflows, if they would produce them, and immediately after such information was generally prevalent in that locality, if it were ever so, not exceeding the amount claimed in the petition.

This instruction, together with the others given in the case, we think fairly presented the law that should have

controlled the jury in arriving at a verdict, and there is no complaint that the verdict is excessive.

Appellant further complains that the court admitted as evidence the mere opinions of witnesses as to the depreciation in value of appellee's lots caused by the structures complained of. It is true some of the evidence in question is open to the objection indicated, but in greater part it went further than mere expressions of opinion, for many of the witnesses fixed the value of the lots both before and after February and April, 1909, and stated other relevant facts upon which it was competent for them to express an opinion as to the damage sustained by appellee on account of the depreciation in the vendible value of the lots, resulting from the erection of the structures complained of.

Our consideration of the record fails to convince us of any error in the trial that can be said to have prejudiced any substantial right of the appellant. Therefore, the judgment is affirmed.