## Chesapeake & Ohio Railway Company v. Blankenship.

(Decided March 27, 1914.)

### Appeal from Lawrence Circuit Court.

1. Railroads—Right To Occupy Own Right of Way With Sidetracks—Owners of Adjoining Land Cannot Object.—The right of a railroad company to construct a sidetrack on its own right of way cannot be questioned by the owner of an adjoining lot, although in order to construct the sidetrack the right of way was so elevated as to prevent ingress and egress to and from

such lot from the right of way. And if, as claimed by the lot owner, he and the public generally had for a long time, even more than fifteen years, been accustomed to use the railroad company's right of way occupied by the sidetrack, such use was purely permissive and did not ripen into a right by mere lapse of time; therefore, the interference with this user, caused by the construction of the sidetrack, did not confer any right of action upon the lot owner for its loss or for being deprived of the right of entrance to his lot from the railroad right of way.

2. Railroads—Injury to Real Property from Train Smoke and Cinders—When Damages Recoverable For.—Where a railroad throws smoke and cinders upon the property of another, it is a trespass upon the property, and this is an injury to the property, for which, by the express mandate of the Constitution (Sec. 242), compensation must be made. And if the injury thus inflicted lbe caused by smoke and cinders from trains standing or moving on a sidetrack, the owner of the property may recover damages therefor, if he was the owner thereof when the sidetrack was constructed.

3. Railroads—Damages To Adjoining Property from Construction of Sidetrack—Measure of.—Where in an action for damages for injury to adjoining property caused by the construction of a sidetrack, the injuries sued for resulted from the throwing of smoke and cinders by trains in great and unusual quantities upon the property, the cutting of a tree thereon, and the flooding of the property by obstructing the drainage of surface water, the measure of damages is the diminution, if any, in the fair market value of the property from these causes; and the one recovery must suffice.

WORTHINGTON, COCHRAN & BROWNING, M. C. KIRK and F. T. D. WALLACE for appellant.

M. S. BURNS, R. C. BURNS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Chesapeake & Ohio Railway Company, owns and operates a line of railroad from Catlettsburg, in Boyd County, up the Big Sandy River to the town of Louisa, in Lawrence County, this State, which is known as its Big Sandy Division and was originally constructed by the Chattaroy Railroad Company, which sold and conveyed it to the Ohio & Big Sandy Railway Company, and by the latter it was sold and conveyed to the appellant. The appellee, D. W. Blankenship, owns a lot and the dwelling house thereon, situated in the northern part of the town of Louisa, fronting upon Locke street near its intersection with appellant's railroad bed, and a side of which abuts upon the appellant's

right of way the depth of the lot. The ground owned by appellant and upon which are situated its roadbed and tracks extends a distance of twenty feet on each side from the center of its main track. Prior to the fall of the year 1912 there was but one track upon appellant's right of way where it adjoins appellee's lot, but in November, 1912, it constructed on the twenty feet of its right of way between the center of the main track and the line of appellee's lot a side-track, known · as a "passing track," in doing which it had to elevate the ground about two feet above appellee's lot in order to place the side-track on a level with the main track.

On the 21st day of December, 1912, this action was instituted by appellee against appellant in the Lawrence Circuit Court for the purpose of recovering of it damages alleged to have been sustained to his lot and buildings thereon by the construction of the side-track along the line thereof. As amended the petition alleged that the construction of the side-track so obstructed the usual flow of the surface water as to divert and cause it to run upon and flood appellee's lot; that ingress and egress to and from his lot was prevented by the elevation of the ground in constructing the side-track; that by reason of the proximity of the side-track to appellee's property the noise of passing trains thereon and the resulting jars and vibrations therefrom had been increased, and smoke and cinders caused-to be thrown in great and unusual quantities upon his lot; also, that while constructing its side-track, appellant's servants cut and injured one of the shade trees standing on his lot; by all of which appellee's property had been injured and its market value greatly depreciated, to his damage in the sum of $1,000.00. Appellant's answer traversed the averments of the petition as amended, and the trial resulted in a verdict awarding appellee $422.00 damages, for which sum and the costs of the action he was given judgment. Appellant's motion and grounds for a new trial having been filed and overruled, it has appealed.

The trial court properly withheld from the consideration of the jury any question of damages claimed by appellee to have resulted to his lot by the elevation of the land in constructing the side-track, although it prevented ingress or egress to and from the premises where it adjoined the right of way. There can be no question but that the side-track was built upon appellant's own right of way, which, where it abutted appellee's lot, extended to

the fence thereof. The regular entrance to appellee's lot is from Locke street; and if, as claimed by him, it had been his custom before the construction of the side-track to walk and drive upon appellant's right of way in entering and leaving his premises, and the public generally had used the right of way adjoining his premises, such user was a permissive one and did not ripen into a right by mere lapse of time, therefore the interference with this user caused by the construction of the side-track did not confer any right of action upon appellee. This question was decided in the following cases: Brown's Admr. v. L. & N. R. Co., 97 Ky., 236; L. & N. R. Co. v. Haggin, 141 Ky., 20; Thompson v. L. & N. R. Co., 110 Ky., 975; Fishback v. Glasgow R. Co., 140 Ky., 155; L. & N. R. Co. v. Childers & Only, 155 Ky., 652.

It is insisted for appellant that a recovery by appellee for the increased quantities of smoke and cinders that were thrown upon his premises by passing trains as a result of the construction of the side-track was unauthorized, it being the contention of its counsel that any right of action for damages on this ground accrued at the time of the original construction of the railroad, and was, therefore, vested in the then owner of the lot and cannot now be asserted by appellee. This contention is untenable, for the ground alleged for the recovery on account of the increased quantities of smoke and cinders that were thrown upon appellee's premises by passing trains appears to be confined by the petition to smoke and cinders thrown upon the premises by trains standing or passing upon the side-track alone, and much of the evidence introduced in appellee's behalf conduced to prove that the increased quantities of smoke and cinders complained of came from trains upon the side-track; and as the side-track immediately adjoins and is situated along the line of appellee's lot, it can readily be understood that such proximity of trains, using the side-track, to appellee's premises, would throw thereon cinders and smoke which could not have reached the premises, and had not done so, from the greater distance of the main track. The construction of the side-track was begun and completed only a few months before the institution of appellee's action, and if his property was injured as claimed and, as the proof tended to show, by reason of

the fact that trains passing upon the side-track were brought so close to his premises as to cause cinders and smoke in excessive quantities to be cast thereon which were not accustomed to be thrown upon the property from the main track before the construction of the side-track, we see no reason for withholding from appellee the right to recover damages for such injury. The right of recovery upon this ground has been recognized in numerous cases in this jurisdiction, among them being I. C. Ry. Co. v. Elliott, 129 Ky., 121, wherein it is said:

"It is also insisted that, as the railroad does not run along the street adjoining the plaintiff's property, she cannot recover anything for the smoke and dirt thrown on her property by the trains. The contrary rule was laid down in Willis v. K. & I. Bridge Co., 104 Ky., 186, and L. & N. R. Co. v. Walton, 24 R., 9. Where a railroad throws smoke and cinders upon the property of another it is a trespass upon the property, and this is an injury to the property, for which, by the express mandate of the Constitution, compensation must be made. Section 242, Constitution, provides: 'Municipal or other corporations or individuals invested with the privilege of taking private property for public use shall make just compensation for the property taken, injured or destroyed by them.' Under this provision, where private property is injured by a railroad corporation, it must make just compensation for the injury and it cannot make any difference whether the railroad is upon a street in front of the property or elsewhere."

Manifestly, if a railroad company is liable for injury caused by smoke and cinders thrown by its trains upon premises not adjoining the railroad upon the street along which they pass, a *fortiori* is it liable, where the property thus injured adjoins its right of way and is by reason thereof subjected to greater injury from the smoke and cinders thrown upon it by the passing trains?

The evidence did not show any injury to appellee's lot or the buildings thereon from the jarring or vibration of the trains passing over appellant's side-track, but the question whether injury was caused the property by smoke and cinders cast off by trains passing over the side-track, was properly submitted to the jury by the instructions.

The evidence with respect to the cutting and injuring of the tree on appellee's lot by the servants of appellant

in constructing the side-track, though a matter of little moment, authorized the inclusion of that item of damage in the instructions as an element of recovery proper to submit to the decision of the jury.

It is not seriously contended by appellant's counsel that the question whether appellee's lot was injured by the diversion upon it of surface water resulting from the construction of appellant's side-track should not have been submitted to the jury, but complained that the trial court erred in instructing the jury as to the measure of damages applicable to such an injury; it being contended that the recovery of damages therefor should have been limited by the instruction to such a sum as would have fairly compensated appellee for the diminution, if any, in the value of the use of the property caused by its overflow by the surface water, instead of which the instruction, as given, told the jury that the measure of damages was the diminution, if any, in the reasonable market value of appellee's property caused by its overflow by surface water.

While the instruction in question is inaptly expressed, it, in substance and meaning, advised the jury that if they found for appellee they should allow him such a sum in damages as would reasonably compensate him for the diminution, if any, in the fair market value of his property caused by the increased quantity, if any, of smoke and cinders thrown thereon from appellant's trains; the obstruction, if any, of the drainage of water from the property; and injury, if any, to his shade tree that resulted from the construction of appellant's side-track, such damages not to exceed, althgether, $1,000.0, the amount claimed in the petition.

In another instruction, marked No. 1, the jury were in substance authorized to allow appellee damages for the obstruction by appellant's side-track of the natural drainage of the surface water from his lot which caused it to flow upon or over the lot to such an extent as to interfere with his ingress and egress to or from the lot, but it is evident from the mention of Lock street in the instruction in the same connection that its meaning was that to authorize a recovery on this ground the interference with appellee's ingress and egress to and from the lot by appellant's obstruction of the surface water with its side-track was with respect to the entrance thereto from Lock street, upon which the lot fronts; and it could

not have been understood by the jury as having any reference to ingress or egress to or from the lot on the side abutting the appellant's side-track. There was abundant evidence to the effect that surface water which had therefore been wont to flow from appellee's lot was, by the construction of appellant's side-track obstructed and caused to run upon the lot and stand thereon; and, according to the testimony of two witnesses, since the construction of the side-track, the surface water has been made to flow and stand upon appellee's lot to the depth of two feet; other witnesses testified that on one or more occasions they had had difficulty in reaching appellee's house from Lock street on account of the surface water standing on the lot; therefore the extent to which such surface water interfered with the right of ingress and egress to and from the lot where it fronts Lock street, was an element of damage which the jury had a right to consider, in connection with any other injury caused the lot by the flow of surface water thereon, in estimating his damages.

It appears from the evidence that prior to the construction of the side-track there was a ditch from Lock street running between appellee's lot and the appellant's right of way, through which the surface water that accumulated on the ground surrounding and contiguous to appellee's lot and Lock street had been accustomed to run off and empty into a nearby branch; but that in constructing its side-track appellant closed this ditch, which caused the water that had theretofore been carried away by it to back upon and overflow both Lock street and appellee's lot. There was evidence that in constructing its side-track appellant put in a drain pipe for carrying off some part of the water that had previously escaped through the ditch; but it further appears from the evidence that this pipe was insufficient in size and placed so high above where the ditch had stood that it was not and could not be reached by the surface water, for which reason it was of no use in disposing of it. We assume that in constructing its side-track it was necessary for appellant to close the ditch referred to, but if so, it was incumbent on it to provide, by means of culverts, drain pipes or other contrivance, some other way of carrying off the surface water which had previously escaped by the ditch, and thereby prevent it from backing upon and injuring appellee's lot; and its failure to provide such means of

escape for the surface water made it responsible to appellee for the injury sustained to his property directly produced by such failure. It is not made to appear from the evidence whether a recurrence of the overflow of appellee's lot can be prevented by appellant yet providing, at a reasonable expense, such openings or culverts as would be reasonably sufficient for the escape of the surface water. In C. & O. Ry. Co. v. Robbins, 154 Ky., 387, quoting from M. H. & E. R. Co. v. Graham, 147 Ky., 604, we in the opinion said:

"In L. & N. R. R. Co. v. Orr, 91 Ky., 109; Hay v. City of Lexington, 114 Ky., 669; Richmond v. Gentry, 126 Ky., 319, and many similar cases, it was held that the structure being permanent and properly constructed a recovery once for all must be had. On the other hand in City of Louisville v. Coleman, 22 R., 64; Klosterman v. C. & O. Ry. Co., 22 R., 192; Finley v. Williamsburg, 24 R., 1338, and in a number of subsequent cases, it was held that recurring recoveries might be had where the structure was unlawfully or negligently built, and by reason of such unlawful or negligent construction injury was inflicted from time to time. In L. & N. R. R. Co. v. Cornelius, 111 Ky., 752; Childers v. L. & N. R. R. Co., 24 R., 275; Stith v. L. & N. R. R. Co., 109 Ky., 158; L. & N. R. R. Co. v. Clinton, 109 Ky., 180; M. H. & E. R. Co. v. Thomas, 140 Ky. 143, and in cases therein cited, it was held that there was a negligent construction of the railroad if the company built a fill and did not leave such openings as were reasonably sufficient for the escape of the water that a person of ordinary prudence should anticipate from the rainfalls and may be reasonably expected to occur. In addition to this there are cases where the trouble cannot be remedied at a reasonable expense; that is, where the cost of remedying it would be so great as to justify the railroad company in condemning the property and taking it under the power of eminent domain. In this character of cases there should be a recovery once for all. In building a railroad the company may do its work so as to deflect a stream from its course, but this may be necessary in the construction of the road. So it may be held that if the trouble may be remedied at a reasonable expense, it may be regarded as temporary; but if the trouble cannot be so remedied it should be regarded as permanent, and this is a question for the jury. (L. & N. R. Co. v. Whitsell, 125 Ky., 433; I. C. R.

R. Co. v. Haines, 122 S. W., 211; L. H. & St. L. Ry. Co. v. Roberts, 144 Ky., 820. * * * There are also cases in which the parties have both treated the structure as permanent; and where they did this the court also so treated it. (C. & O. Ry. Co. v. Stein, 142 Ky., 520; M. H. & E. R. Co. v. Wier, 144 Ky., 206; Central Consumers Co. v. Pinkett, 122 Ky., 720.)''

If appellee were here merely suing for the injury, sustained to his property from its overflow by surface water caused by appellant's negligent construction of its side-track, we would say that a recovery therein would not prevent future recoveries by him for similar recurring overflows of the same property; because the trouble as to this matter could apparently be remedied by appellant at reasonable expense. But as a splitting of causes of action that grow out of one and the same tort and may be joined in the same action, will not be allowed, appellee could not by a separate action segregate his right of action for the flooding of the lot from his right of action for the injury to the lot caused by the throwing thereon from appellant's trains of smoke and cinders in unusual quantities, and that from the cutting of his tree; and as these are permanent injuries from a permanent cause, for which there can be but one recovery, there should likewise be but one recovery for the flooding of the lot.

Not only do the facts as alleged place this case in the class of cases in which but one recovery is allowable, but the parties have both treated the structure as permanent and the case throughout as one in which but one recovery could be had as to all the items of damage claimed; and this being true, the court will so treat it.

So viewing the case, the trial court in instructing the jury as to the measure of damages, as previously stated, properly limited the recovery to the diminution in the fair market value of the appellee's property caused by the injuries complained of. The measure of damages contended for by appellant, viz.: the diminution in the value of the use of the property during the continuance of the nuisance, does not apply when the injury complained of is treated by the parties themselves as permanent and should, for that reason, be so treated by the court. City of Louisville v. Pickrell, 125 Ky., 213; C. & O. Ry. Co. v. Robbins, 154 Ky., 387.

No reason is apparent for sustaining appellant's further contention that it was appellee's duty to have done what he could to minimize the damages sustained to his property from the obstruction or diversion by appellant of the natural flow of surface water.   This contention is satisfactorily refuted by the following excerpt from the opinion in M. H. & E. R. Co. v. Cates, 138 Ky., 257, rejecting a similar contention there made.

"The greater part of appellant's evidence was directed to showing that appellee's land was subject to overflow, or at any rate standing water, before the construction of its railroad, and that by ditching his land or erecting on the bank of Greasy Creek, near its railroad, an embankment or levee, he might have prevented its overflow, or at least have lessened the injury to his crops, and thereby minimized his damages.   While it is true some of appellee's land was wet land, and for that reason more liable to injury from overflow of water in greater quantity than was natural or usual, it was not, according to the evidence, so wet as to interfere with its profitable cultivation, until the wrongful acts of appellant complained of caused its overflow; and if, as alleged in the petition and in large measure shown by the evidence, appellant, by negligently diverting the water from its natural and customary channels, or by obstructing its natural and usual course, caused it to overflow in greater and unusual quantity upon appellee's land than was its wont, and to the injury of his crops, it does not lie in its mouth to complain that appellee did not minimize his damages.   Indeed, he was under no duty to relieve appellant of the consequences of its negligence, and could have done nothing in the matter of minimizing his damages, that would have been so effectual as the restoration by appellant of the natural channels by which his land was drained and its overflow prevented, before they were closed or changed by appellant.   If the evidence had shown that the damages sustained by appellee from the overflowing of his land were inconsequential, or that he might at slight expense have avoided the injury to his crops, there might be some reason for insisting that he was guilty of negligence in failing to do so, but such were not the facts in this case, the injury was more than trivial, and the expense of restoring the drains would have been considerable and more than appellee should have been required to bear."

Appellant's final contention that the amount of damages awarded appellee by the jury is excessive cannot be sustained. The weight of the evidence fixed the market value of appellee's house and lot, before the construction of appellant's side-track at $700.00 to $1,000.00 and its market value at the time of the institution of his action at $400.00 to $500.00, in view of which it cannot be said that $422.00, the amount of damages awarded, is excessive.

The instructions, as a whole, fairly advised the jury as to all the law of the case, and the record presenting no substantial cause for disturbing the verdict, the judgment is affirmed.

Judge Hannah not sitting.