## Norfolk & W. Ry. Co. v. Little.

(Decided June 24, 1938.)

682

W. R. McCOY, W. W. COX and COWDEN & COWDEN for appellant.

CHESLEY A. LYCAN for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

The Norfolk & Western Railway Company, hereinafter referred to as the company, is appealing from a judgment of the Lawrence circuit court recovered by Bill Little as damages to his farm alleged to have been caused by a fill made by the company along the banks of Tug river which diverted the waters of the river and caused them to flow against the lands of the opposite side.

As appears from the record prior to 1925 the company owned and operated single track line of railroad in West Virginia, practically paralleling the river. Appellee's farm abuts the river on the Kentucky side. The fill complained of was made in order that the company might put down double tracks. Formerly the space between the banks of the river and the mountain on the West Virginia side was very narrow. In order to widen it sufficiently for double tracks it was necessary to blast off the mountain side and to make a fill with stone along and near the river bank. The fill was completed in 1925, although there is some evidence that some stone had been dumped along the fill since that time.

Appellee instituted this action on August 31, 1936, alleging in his petition that appellant wrongfully and unlawfully placed and permitted to remain in the river and opposite his farm and upon his farm large quantities of stone, dirt, concrete and other substances causing the bank to slip, break down and go into Tug river, thereby filling up the channel of the river and interfering with and diverting the flow of the waters thereof and causing same to run and flow with unusual and un-

natural force against the land of appellee; that as a proximate and direct result thereof the water of the river was caused to cut away and destroy the river bank and farm land for a distance of 2,000 feet to his damage in the sum of $2,750 for which he prayed judgment.

Appellant filed a motion to require appellee to make his petition more definite and certain as to the time at which the injury occurred and as to what point on the property described in the petition injury was done. Thereafter appellee filed an amended petition setting out more in detail the places where the alleged injury occurred and alleged that the erosion of the land had been gradual and from time to time within 5 years prior to the filing of the original petition and that in times of high water the erosion had been faster and more pronounced.

By answer the company made a general denial of the allegations of the petition and affirmatively alleged that the embankment complained of was all on the lands owned by it extending to Tug river; that none of the rock or material used in making the fill was at any time dumped or deposited at the foot or at the toe of the fill and none was dumped, deposited or allowed to go into the river; that the double track was completed in August, 1925 and since that time no filling whatever had been done at or near the location mentioned in appellee's petition nor had any stone, rock or other material been dumped by appellant at or near such location; that the fill and embankments completed in August, 1925 were and are an integral part of appellant's railroad and are permanent improvements and structures extending along its right of way for such distance only as is necessary to support its roadbed and tracks and that same could not be removed, changed or altered except at a cost and expense in excess of the alleged injuries to plaintiff's property and greater than the value of his entire farm and that any change in its embankment to reduce the fill would destroy its roadbed; that any damages complained of by appellee were also permanent; that any injuries and damages claimed by appellee followed upon the completion of the railway embankment and double track in 1925 and that any cause of action accruing to appellee arose as soon as the permanent structure was completed; that the embankment and fill were completed more than 5 years prior to the institu-

tion of the action and therefore the cause of action, if any, was barred by limitations.

By reply appellee traversed the affirmative allegations of the answer. While a number of grounds are argued for reversal, the conclusion we have reached concerning one of the grounds, namely, that appellant's plea of limitations should have been sustained, renders it unnecessary to consider or discuss other grounds.

Unquestionably, as revealed by the evidence, the fill complained of by appellee was intended to be and is in fact a permanent structure and it is argued by counsel for appellant that the 5 year statute of limitations (Kentucky Statutes, section 2515) began to run against plaintiff from the completion of the fill or at least from the time appellee made formal complaint to appellant. As respects damages caused by permanent and properly constructed structures, it has been consistently held by this court that recovery once and for all must be had; but it is further a fixed rule that the cause of action for damages caused by such structure does not necessarily accrue upon the completion of the structure but only when injury occurs or when it becomes reasonably apparent to the injured party that injury may occur. See Chesapeake & O. Ry. Co. v. Robbins, 154 Ky. 387, 157 S. W. 903 and cases therein cited. Big Sandy & C. R. Co. v. Thacker, 270 Ky. 404, 109 S. W. (2d) 820. Appellee attempts to bring this case within the scope of other rules referred to in the cases above cited, but this we think he signally fails to do.

On January 12, 1927, appellee wrote to S. B. Porter, roadmaster of appellant, a letter which, omitting the formal parts, reads:

"Near Mile Post 17 Big Sandy Division and near Camp Creek Bridge, you and your company, for some cause best known to yourselves, have dumped stone and other things into Tug River which has almost completely changed the course of that River from its natural course. By this filling up the River the course and current has been changed from the shores of the West Virginia side to the shores of the Kentucky side, which change has caused the waters of the River to encroach upon the banks and my land on the Kentucky side, thereby washing and completely destroying my River

banks and valuable land at different places and in all, a distance of a quarter of a mile.

"I shall now ask you to stop this dumpage and to have your claim agent call and see me at once and make settlement with me for the damage which has already accrued by reason of this construction work done at the above mentioned places.

"Please let me hear from you at your earliest convenience and make a voluntary settlement without litigations. I am,".

In that letter appellee set out all of the material matters and conditions which he alleged in his petition and testified on the trial of the case caused injury to his land and he also set out and described the injuries which he alleged and testified resulted to his land from making the fill. He complained that the structure and obstructions extended out into the river and had diverted the flow of its waters so as to throw them against his lands in such a way as to wash and destroy the river banks. With such knowledge of every condition complained of in his petition and evidence, and that damage already had and would continue to result from it, appelle brought no action until over 8 years thereafter.

It does not appear when appellee first acquired this knowledge but it certainly requires no argument to demonstrate that his cause of action accrued not later than the date of his letter to appellant and since the action was not instituted within 5 years thereafter, appellant's plea of limitation should have been sustained, and the jury directed to return a verdict in its favor upon motion made at the close of the evidence.

Judgment reversed and cause remanded for a new trial and proceedings in conformity with this opinion.