## SLAUGHTER, EXECUTOR, *v.* SLAUGHTER.

[No. 2,677. Filed February 24, 1899.]

DECEDENTS' ESTATES.—*Advancements.*—*Interest.*—A son upon receipt of $500 advanced to him by his father signed a statement acknowledging the receipt thereof in full of all claims as heir of his father, and agreeing to pay interest on the sum advanced at the rate of six per cent. from date. No interest was paid during the lifetime of the father. *Held*, that at the death of the father his estate could recover interest on the sum so advanced at the rate of six per cent. per annum from the date of the instrument until the date of the father's death.

From the Elkhart Circuit Court. *Reversed.*

*W. J. Davis*, for appellant.

*C. W. Miller* and *J. S. Drake*, for appellee.

BLACK, C. J.—The court below held each of the two paragraphs of the appellant's complaint insufficient on demurrer. In the first paragraph it was shown that on the 13th of March, 1863, at the city of Goshen, Elkhart county, Indiana, the appellee, John B. Slaughter, executed to one Solomon Slaughter an agreement in writing, a copy of which was set out, as follows: "I, John Slaughter son of Solomon Slaughter of Ravenna, Ohio, hereby acknowledge the receipt of five hundred dollars this day from my father, Solomon Slaughter, and I hereby acknowledge the same to be in full of all claims that I may have upon my father's estate after his death as one of his heirs, and I hereby stipulate and agree not to set up any claim as heir to my father's estate after the decease of my father, and I hereby stipulate and agree that said sum of five hundred dollars shall bear interest at six per cent. from

this date." ·The instrument was witnessed by the signature and seal of John B. Slaughter, and bore the date alleged.

It was further alleged, that in April, 1896, said Solomon Slaughter died, at Portage county, Ohio, testate, and that the appellant was the duly appointed and qualified executor of the last will and of the estate of said decedent; that the appellee did not pay any part of the annual interest on said sum of $500, "as by him agreed to be paid to said Solomon Slaughter in his lifetime, nor has he paid said annual interest or any part thereof to this plaintiff as executor of the estate of said Solomon Slaughter, deceased, though often requested so to do; that there is now due plaintiff from defendant the sum of twelve hundred dollars accrued interest as aforesaid. Wherefore," etc.

In the second paragraph it was alleged, that on the 13th of March, 1863, the appellee was the son of one Solomon Slaughter and resided in Goshen, Indiana; that on said day the appellee proposed to his father that if the latter would then advance and pay the former the sum of $500, he, as one of the children and heirs of said Solomon Slaughter, would thereafter make no claim for any further sum or amount from the estate of his father at his death; that the appellee proposed, further, to his said father, as an inducement to him to raise for and pay to the appellee said sum of $500, that the appellee would pay said Solomon Slaughter interest on said sum at the rate of six per cent. per annum until the death of said Solomon Slaughter; that the latter then and there accepted said proposition of the appellee, and did raise for and pay the appellee said sum, in accordance with said proposition; that then and there, the appellee, to evidence the terms and condition of his said proposition and agreement, at Elkhart county, Indiana, executed to

said Solomon Slaughter his indenture in writing. The instrument is set out, being the same as is in the first paragraph, and the remainder of the second paragraph is like the closing portion of the first.

It is sought to enforce this instrument as a written promise to pay money; not to repay the sum received by the appellee, as shown by the instrument, but to pay the interest which, by the terms of the writing, that sum was to bear. It is sought to recover this interest as a part of the assets of the decedent's estate. The suit is brought in a court of this State to recover upon the instrument executed in this State, as a promise to pay money generally, and the question for decision is whether or not the writing should have such a meaning attributed to it. If it ought to be treated as evidencing an advancement merely, both as to the amount received by the son from the father and as to the interest mentioned, it cannot be regarded as evidencing a debt.

An "advancement" has been defined as a giving by anticipation of the whole or a part of what it is supposed a child will be entitled to on the death of the parent making the advancement. *Dillman* v. *Cox*, 23 Ind. 440; *Ruch* v. *Biery*, 110 Ind. 444; *Daugherty* v. *Rogers*, 119 Ind. 254, 3 L. R. A. 847. In *Hirkimer* v. *McGregor*, 126 Ind. 247, 253, a definition in a text book is quoted, as follows: "An advancement is an irrevocable gift by a parent, who afterwards dies intestate, of the whole or a part of what it is supposed the child will be entitled to on the death of the party making the advancement. See, also, *Osgood* v. *Breed's Heirs*, 17 Mass. 356; *Miller's Appeal*, 31 Pa. St. 337. In *Quarles* v. *Quarles*, 4 Mass. 680, 684, it was said: "What could be more absurd than that a charge or memorandum by the intestate should be evidence of the advancement of a child, while a solemn acknowl-

edgement by his," the child's, "deed, as is this case, should not be at all admissible for the same purpose?"

In the case at bar the father died testate, and the appellant sues as executor. The will is not before us. What effect, if any, the instrument in suit should have in connection with any of the provisions of the will, is not to be decided in passing upon the question as to the sufficiency of the complaint. It has been held that, where a father giving money to his son takes the latter's note for its payment, it is a debt, but the father has power by his will to turn the debt into an advancement. *Porter's Appeal*, 94 Pa. St. 332. The will could not make an advancement, which is irrevocable, a part of the estate. An advancement made in the lifetime of a testator forms no part of the estate, to be administered by his executor. It cannot be resorted to for the payment of debts, and the child advanced cannot be compelled to refund, for any purpose connected with the settlement of the estate. It cannot be recovered back from the person advanced, even for the purpose of equalizing legacies. *Black* v. *Whitall*, 1 Stock. Ch. (N. J.), 572, 59 Am. Dec. 423. Interest is not chargeable ordinarily upon advancements. *Moale* v. *Cutting*, 59 Md. 510; *Black* v. *Whitall*, *supra*. An advancement is not treated as borrowed capital, drawing interest. *Osgood* v. *Breed's Heirs*, *supra*. One of the incidents of an advancement is that it shall be valued as of the date at which the child received the money. *Porter's Appeal*, *supra*. The time when an advancement is to be considered and settled is after the death of the ancestor, regardless of the time when made. *Miller's Appeal*, *supra*. Interest is not chargeable on an advancement, unless there be clear expression that it shall carry interest. An advancement is not chargeable with interest, "unless, perhaps, when expressly given and received upon such

terms." *Miller's Appeal, supra.* See, also, *Robertson* v. *Nail,* 85 Tenn. 124, 2 S. W. 19; *Fickes* v. *Wireman,* 2 Watts. 314.

In determining whether the writing before us should be construed as a promise to pay the interest, or as an agreement that the interest should be added to the sum received and the amount should constitute an advancement, it is not necessary to decide whether or not the acknowledgment of the money received to be in full of all the son's claims as an heir, and the stipulation and 'agreement of the son not to set up any claim as an heir, could, under any circumstances, impose upon the son any binding obligation. Upon that subject the authorities are conflicting. See *Needles* v. *Needles,* 7 Ohio St. 432; *Quarles* v. *Quarles, supra; Stokesberry* v. *Reynolds,* 57 Ind. 425; *Bower* v. *Bower,* 142 Ind. 194; *Binns* v. *Dazey,* 147 Ind. 536. Those stipulations in relation to the son's claims as heir, not to rights he might afterward have as devisee or legatee, are to be viewed with regard to the situation of the parties at the time of the excution of the instrument. The object of our present inquiry being to construe the instrument, we must have regard to the purpose of the parties at the time of its execution; we must seek to ascertain what it meant to them; and therefore we must suppose that they regarded these engagements upon the part of the son in the writing as binding upon him according to the usual sense of the words, and that all parts of the instrument were inserted with such understanding of the father and the son; that the stipulation in relation to interest was made with a meaning consistent with the meaning in the minds of the parties of what went before it in the writing. Unquestionably, the sum received by the son was an advancement, whether, because of the acknowledgment thereof as in full of all claims the

son might have in the estate of his father after his
death as one of his heirs, and his promise not to set
up any claim as heir, the son could have been excluded
from a share as heir or not.   If the instrument had
ended here, without the stipulation concerning inter-
est, there would have been merely an advancement
given with the understanding and agreement of the
parties that it was to be in full of the son's claims as
heir, and that he should not set up any such claims,
and, if it had so ended, the father, or his personal rep-
resentative after his death, could have had no claim,
based upon this instrument, against the son.   If it
was the understanding that the son was cut off from
any claim whatever as heir by this gift of $500 and
these stipulations, what reason could there be for the
further stipulation and agreement about interest, if
the interest was understood to be a part of the ad-
vancement?   It was a stipulation in addition to the
acknowledgment and engagement relating to claims
as heir.   There could be no plausible reason for add-
ing the interest to the advancement, which without
it was to cut the son off from any share as heir.   To
treat the interest as part of the advancement would
be attributing inconsistency to the written instru-
ment, whereas, if it will bear a construction which
makes its parts consistent with each other, it ought to
receive it.   Having reference to the understanding as
manifested by the writing, there could be no good
reason for the stipulation and agreement that the sum
of $500 received should bear interest at six per cent.
from the date of its receipt, unless it be regarded as a
promise of the son that, besides claiming nothing as
heir, he would be bound for the interest on the $500
at six per cent. per annum, from the date of his receipt
of that sum.

In *Doty* v. *Willson*, 47 N. Y. 580, it was said:   "The

court below also erred, we think, in holding that the gift was necessarily invalid because the right to call for six per cent. interest was reserved. It is undoubtedly a general rule that the donor must part with all interest and control over the property; but I can find no authority, nor can I see any reason for the doctrine, that a promise made by the donee to pay a sum of money or do an act not amounting to a condition of delivery or title, can invalidate the gift. If this was a gift of the $3,000, the title and control of the money immediately vested in the donee, and his promise to pay the donor six per cent. in no degree affected such title or control. It might be a circumstance to determine whether it was a gift or not, but would not invalidate it as a gift. The donor could never recover back the principal, nor in any manner control it, and it is not material to inquire whether he could recover the interest. If he could, it would be upon a principle not affecting this question.   *   *   *   If it was an advancement, and the deceased had died intestate, it would have been brought into hotchpot and deducted from the share of the defendant, but advancements only apply in cases of intestacy, and when a will is subsequently made without noticing the advancement, the children take according to the will without abatement."

*In re Hicks,* 14 N. Y. St. 320, a father gave his son a certain sum as an advancement, upon the agreement of the son to pay the father interest upon it during his life, in monthly payments of a specified sum. After the father's death, the son was charged with the interest so far as it remained unpaid at the death of the father, but not for the sum advanced. It was held that the fact that the son agreed to pay his father interest upon the gift at the rate specified in their agreement did not invalidate it as a gift; citing *Doty* v. *Will-*

*son, supra.* It was said: "It was plainly competent for him to part with his money upon such terms as both parties agreed to, and it was immaterial by what name the transaction is called. Say that he purchased an income in the nature of an annuity, payable in monthly installments, and it is equally valid as a defense."

In *Ruch* v. *Biery, supra,* a father made advancements of lands to his sons, who each agreed to pay an annuity amounting to six per cent. of the consideration named in the deeds by which the lands were conveyed to them. The sons having failed to pay the annuities, the amount thereof was treated as assets of the deceased father's estate.

If the intention of the parties to the instrument in suit can be ascertained by reasonable construction, and performance be not impossible or illegal, the purpose should be effectuated. We must assume that no stipulation was inserted as a vain and useless form of words. The stipulation concerning the interest must be taken in the meaning of the words as we must suppose them to have been understood by the parties, but most strongly against the promisor, the son, and most favorably toward the promisee, the father. The agreement was that the sum given should "bear"— that is, produce or yield—interest at six per cent. It was intended that this interest should be paid by the son to the father. It was a provision for the benefit of the father, to be enjoyed by him. The sum which was to bear interest was itself never to become due to the person who was to receive the interest. If it were a stipulation for interest on a sum which was itself to constitute a principal indebtedness, the interest, no time of payment thereof being expressly stated, would become due and payable when the principal should be due and payable. At the time of the execution of the

Slaughter, Ex., *v.* Slaughter.

instrument there was in force a statutory provision that "where in any law or in any instrument of writing, specifying a rate of interest, when no period of time is mentioned for which such rate is to be calculated, it shall be deemed to be by the year." R. S. 1876, p 601. Such meaning, we think, belongs to the stipulation under examination; such must be regarded as the intention of the parties.

A promise to pay a certain sum of money, upon a sufficient consideration, is not rendered void by the fact that no time of payment is expressed. Here was, in effect, a promise of the son to pay the father "interest" at the rate of $30 by the year, or per annum. The period for which the sum given was to bear interest was until the decease of the father, before mentioned in the instrument. It is reasonable to say that the stipulation had relation to what went before. The whole instrument must be considered in construing any portion of it. In *Brimblecom* v. *Haven*, 12 Cush. 511, where a testator by his will gave his widow "the interest of $600" for and during her natural life, this was held to be an annuity equal to the interest of such sum. Where there is nothing but a simple gift of so much a year to A., he takes it only for life. *Hill* v. *Potts*, 8 Jur. N. S. 555. It seems to be the reasonable meaning of the stipulation of the appellee, that he would pay his father annually a sum equal to the interest upon $500 at six per cent. per annum, during the life of the father. Unless this stipulation be given such effect, it would seem to be necessary to hold it void for uncertainty; for no other construction appears reasonable which would raise an indebtedness of the son to the father in his lifetime, on which his personal representative could maintain an action.

The inartistic form and incompleteness of the writing render its construction difficult. We have sought

a construction which will avoid inconsistency in the terms of the instrument, and which will carry into effect the apparent intention of the parties. The complaint in each paragraph stated facts sufficient to put the appellee to his answer. The judgment is reversed.