## Shaws' Guardian, Louisville Trust Co. v. Grimes, Execu- tor, et al.

(Decided November 7, 1919.)

### Appeal from Meade Circuit Court.

1.   Wills—Distribution of Personalty.—Testamentary capacity as to
personalty is governed by the law of testator's domicile and per-
sonalty should be distributed accordingly.

2.   Wills—Disposition of Real Estate.—The effect and validity of a
will in regard to the disposition of real estate or immovable prop-
erty depends upon the lex rei sitae.

3. Wills—Instruments Affecting Title to Real Estate.—All instruments affecting the title to real estate situated in this state must be governed as to their execution, construction and legal sufficiency exclusively by the laws of this Commonwealth and not by the laws of a sister state or foreign country, where the maker may reside at the time of its execution.

4. Wills—Interest Charge Upon Advancement.—Where there is no provision in a will providing for the payment of interest on an advancement, interest will not be chargeable thereon, but where the will contains an express provision to charge interest or manifests an intention so to do it will be charged.

5. Judicial Sales—Indivisibility of Property.—Prima facie a tract of land of 1274 acres purchased as four separate farms is divisible without materially impairing its value.

6. Wills—Interest Charge Upon Advancement.—Where the testator clearly indicated in his will that certain devisees should be charged with interest on advancements, interest will be charged from the date indicated by the testator, and not from the several dates when the items constituting the total were paid or advanced.

SHACKELFORD MILLER and EUGENE HUBBARD for appellant.

J. M. RICHARDSON, J. D. HARDIN, E. C. O'REAR and J. P. ADAMSON for appellees.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

Josiah Shaw died testate on the 31st day of December, 1913, a resident of Crawford county, Indiana. At the time of his death he owned certain real and personal estate in said county. He was also the owner of four farms in Meade county, Kentucky, containing 1,274 acres. By the terms of his will he devised his property one-third each to his wife, Carrie N. Shaw, a daughter, Minnie E. Grimes (referred to in the will as Minnie M. Grimes), and to his granchildren, Ava Loraine Shaw and Lyman P. Shaw, Jr., infant children of a deceased son, Lyman P. Shaw, said children taking the share of their father.

Simon E. Grimes, the husband of Minnie E. Grimes, nominated as executor of the will, duly qualified as such and proceeded to administer upon the estate, both in Crawford county, Indiana, and Meade county, Kentucky. The present suit was filed by Simon E. Grimes, as executor, Carrie N. Shaw and Minnie E. Grimes and her husband as plaintiffs, for the purpose of selling the property in Meade county, and for a division of the proceeds, after equalizing certain advancements made to the in-

fants and their father and to Minnie E. Grimes. The infants, Ava Loraine Shaw and Lyman P. Shaw, Jr., were made defendants.

This case was referred to the commissioner who duly filed his report, judgment was entered, the property sold and a division made among those entitled thereto, Minnie E. Grimes and the infants being charged with certain advancements, together with interest thereon, from the dates of the several advancements to January 1, 1914. Simon E. Grimes became the purchaser of the four farms at the price of $71,400.00.

A board bill filed by Simon E. Grimes, after exceptions had been filed to its allowance, was later withdrawn and the proceeds of the sale divided in accordance with the judgment.

The total amount collected from the personal property in Indiana, including dividends and interest, amounted to $18,052.27, subject to disbursements and costs of $1,319.18, leaving a net sum of $16,733.09, plus about $2,000.00 of real estate to be distributed among the devisees. Included in the disbursements is an item of $160.50, set aside to the widow.

In the report of the master, Minnie E. Grimes was charged with the sum of $8,956.68, representing advancements of $6,377.72 and $2,578.96 interest. The infants were charged with advancements of $13,380.57, interest $12,130.81, a total of $25,511.38, subject to a credit including interest thereon of $2,760.79, leaving a net sum charged to them of principal and interest $22,750.59.

To equalize the widow and Minnie E. Grimes with the aggregate charged to the infants on this basis, Minnie E. Grimes should receive $13,793.91, and the widow, excluding the amount set apart to her, $22,750.59, a total of $36,544.50.

If, therefore, it was proper to charge interest on the advancements the net amount in the hands of the Indiana administrator of $16,733.09 lacked $19,703.46 of being sufficient to pay Minnie E. Grimes and the widow enough to equalize them with the infants.

From the proceeds of sale of the four Meade county farms amounting to $71,400.00 there was first deducted by the lower court the sum of $36,544.50, being the sum necessary upon the basis adopted, to equalize the widow and Minnie E. Grimes with the infants, and which left a balance of $34,855.50 for distribution among the devisees.

The master's report was confirmed without exceptions, and no appeal was then prosecuted from that judgment. Thereafter Minnie E. Grimes and her husband filed an assignment from the widow of her interest in the purchase bonds and sought credit upon the sale bonds of S. E. Grimes, the purchaser, for the amount due the widow, who had died after the execution of the alleged assignment.

The guardians *ad litem* for the infants filed exceptions to this assignment, claiming it was void on the ground that the widow was 80 years of age when she executed it a few days before her death, that it was without valuable consideration and she did not have sufficient mind to execute this assignment, and further that it was procured by fraud and undue influence; issue was joined upon the question of the validity of the assignment and a jury trial had thereon resulting in a verdict sustaining its validity. From this judgment the guardians *ad litem* appealed. See Shaw v. Shaw's Admr., 174 Ky. 398, 192 S. W. 491, in which the court, in dismissing the appeal, held that the guardians *ad litem* did not have the right or power to question on behalf of the infants the validity of the assignment and were without right to prosecute the appeal in their behalf, the court saying:

"Whatever, if any, rights these infants may have in the estate of Carrie N. Shaw were in nowise involved in this case, and the guardians did not have the power to bring such a matter into this action, so as to give them the right, upon behalf of the infants, to litigate the matter. It is certainly obvious that, under our laws, they could not have instituted an action on behalf of the infants to determine their interests in the estate of Carrie N. Shaw, nor could they, with any better right, bring such matters into this litigation, so as to give them the power to represent the infants in reference thereto. The infants were not in court, upon that matter, and are not bound, in any way, by such action by the guardians *ad litem*, or by the judgment of the court resulting therefrom."

Thereafter the errors pointed out by this court were corrected by motion and petition filed in the circuit court by the present appellant as guardian for the infants and from a judgment adverse to their contentions said guardian prosecuted this appeal as well as appeals from the judgment of October 5, 1914, ordering a sale of the

real estate in Kentucky, and from the judgment of January 29, 1915, confirming the report of sale.

It is first urged that Josiah Shaw, being a citizen and resident of Crawford county, Indiana, at the time of his death, the circuit court of that county had original and exclusive jurisdiction to settle his estate as between his creditors, widow and children. A motion to file an intervening petition raising this point was overruled.

Testamentary capacity as to personalty is governed by the law of the testator's domicile, and personalty should be distributed accordingly. Fletcher's Admr. v. Weir, &c., 7 Dana. 345, 32 Amer. Dec. 96; Atchison's Heirs v. Lindsey, 6 B. Mon. 89, 11 R. C. L. 445. The construction and effect given a will by the courts of a testator's domicile are everywhere recognized as binding. This is on the theory that the situs of such property is supposed to be where the owner has his domicile. And while a will is presumed, in the absence of anything to the contrary, to have been drawn in accordance with the laws of the testator's domicile and will be interpreted accordingly, its effect and validity regarding the disposition of real estate or immovable property so situated or the creation of any interest therein will depend upon the *lex rei sitae.* All instruments affecting the title of real estate situated in this state must be governed as to their execution, construction and legal sufficiency exclusively by the laws of this Commonwealth and not by the laws of a sister state or foreign country, wherein the maker may reside at the time of its execution.

Some courts recognize an exception to this rule where it is sought to ascertain the intention of the testator solely from the language used in the will, in which case the law of the testator's domicile or the *lex domicilli* controls. Sneed v. Ewing, 5 J. J. Marsh 459; Houser v. Paducah Lands Co., 157 Ky. 252, 162 S. W. 1113; United States v. Fox, 94 U. S. 315; Peet v. Peet, et al., 229 Ills. 341, 11 Amer. & Eng. Ann. Cas. 492; Jacobs v. Whitney, 205 Mass. 477, 18 Amer. & Eng. Ann. Cas. 576; 1st Redfield on Wills, 398, and Page on Wills, sec. 28.

It is argued by counsel that if interest is not charged on the advancements and the widow is charged with the sum of $160.50, representing personality set aside to her, there would be sufficient funds in the hands of the Indiana administrator to pay the widow and Minnie E. Grimes an amount sufficient to equalize them with the total advancements to the infants, and hence a sale of

the Meade county property was not necessary. As to any question involving real estate located in Kentucky the courts of this state are not bound by any decision of the Indiana court.

The right to charge interest on advancements is one of the main questions involved here. In the will of Josiah Shaw it is provided:

"Second. I give and devise all my estate of whatsoever kind, real personal and mixed to my beloved wife, Carrie N. Shaw, one-third (1/3) and to my grandchildren, Ava Loraine and Lyman, Jr., Shaw, children of my son, Lyman P. Shaw, one-third (1/3) and to my daughter, Minnie M. Grimes, wife of Simon E. Grimes one-third (1/3) they to share and share alike, my said grandchildren, Ava Loraine and Lyman, Jr., taking one equal share, provided that there shall be charged against and deducted from the share of my said grandchildren, Ava Loraine, and Lyman, Jr., any and all sums of money which I have already advanced to or paid out for or shall hereafter advance to or pay out for my son, Lyman P. Shaw, their father, which may be shown by his note or notes and my book account of the same charged against him, provided, also that there shall be charged against and deducted from the share of my daughter, Minnie M. Grimes, any and all sums of money which I have already advanced to or paid out for or shall hereafter advance to or pay out for her or her said husband, Simon E. Grimes, as may be shown by his note or notes and my book account of the same charged against him.

"It is my desire and I direct that my beloved wife, and my two grandchildren, Ava Loraine and Lyman, Jr., they taking one share, and my daughter, Minnie M. Grimes, shall be made equal in the final distribution of my estate."

The account book referred to is copied into the record, and after enumerating the various advancements to Lyman P. Shaw, beginning in September, 1900, and continuing through July, 1908, the last being an item for burial expenses, there appear these notations:

"1907, Sept. 3. The above account *detter* & credit both *addete* balance due J. Shaw and $12,399.40 *adblow* $12,640.00 and *inst.*

"1909, Jan. 20. To monument stone paid Taylor to be added to above $240.00.

"The above is codicil to Will, Lawyer *Judg* Cooke said no *codcil nesary* to Will."

Where there is no provision in a will providing for the payment of interest on an advancement it is a rule of universal application, that interest will not be chargeable thereon. 18 C. J. 931; Slaughter v. Slaughter, 21 Ind. App. 641, 52 N. E. 994.

As stated by the author in 40 Cyc., p. 1924, an advancement being in the nature of a gift, no interest is to be charged in determining its amount in the absence of an express provision to that effect in the will which, of course, it is competent for the testator to make. See also Page on Wills, sec. 788.

It will be seen by the second clause of the will that testator mentions advancements made to the father of the infants, and reference is made to certain notes and the book of account of the sum charged against him. In this book testator has totaled the amount of said advancements and fixed the same at $12,640.00, which includes the proportion chargeable to the son for the erection of a monument, the totals of the items being $12,399.40; adding to this the cost of the monument $240.00, testator states the amount in round figures as $12,640.00. Immediately following the said last named amount testator adds the words, "*and inst*," from which it is manifest he intended to charge interest on the advancements from the date that he found the aggregate as above stated, to-wit, Sept. 3, 1907. But the master in his report charged interest on the several advancements from the dates when made, beginning as far back as 1900, and in some instances the items of interest are greater than the principal. That the master erred in so calculating the interest is manifest, and in approving this report the lower court fell into a like error. Testator unquestionably had the right to charge the father of these infants with interest on the advancements made. This is clear from the provisions of the will. It is equally clear that he did not intend to charge this interest from the time the advancements were made, because he has carefully totaled these several items and fixed Sept. 3, 1907, as the date from which interest was to run and the infants should be charged interest from this date only, and not as allowed by the master from the several dates when the money was paid or advanced.

Appraisers appointed by the Crawford circuit court fell into a similar error in charging interest. From their report, a copy of which is found in the record, they reached exactly the same total as did the master in the

court below, charging the infants and Minnie E. Grimes with $22,750.59 and $8,956.68 respectively, which includes the principal and interest. No exceptions were filed to this report.

It is claimed that evidence of or concerning the account book is inadmissible. In re Greenwood's Estate, 208 S. W. 635, is cited in support of this contention. This is a decision of the Kansas City Court of Appeals. The case is not in point because there the will did not indicate a purpose to charge the devisees with advancements. The executor charged one of the devisees with advancements to her as shown by an account book, reference to which was not made in the will and the court held that the entry made in the book not having been contemporaneous with the execution of the will was a self serving statement, and therefore inadmissible. In the instant case the testator expressly directed, in the second clause of his will, that the infants and their father and Mrs. Grimes be charged with advancements as shown by his book of account. It was his evident intention to make this account book a codicil to his will—he so states in an unsigned memorandum in the book itself—he unquestionably had the right to refer to said book as evidence of the advancements with which the devisees were chargeable, and it is quite certain he intended the notation as to interest as a necessary part of these advancements.

It is next urged that the judgment confirming the sale of the four farms was void. It is alleged in the petition that "said four tracts of land are in their (devisees) possession, and cannot be divided between them under and in accordance with and so as to meet the requirements of the last will of said decedent, without materially impairing the value of said land and without materially impairing the value of the interest of each of the plaintiffs therein."

Sec. 490, subsec. 2 of the Civil Code provides that a vested estate in real property jointly owned by two or more persons, may be sold by order of a court of equity, in an action brought by either of them, though the plaintiff or defendant be of unsound mind or an infant, if the estate be in possession and the property can not be divided without materially impairing its value, or the value of the plaintiff's interest therein. We think the foregoing allegation a sufficient compliance with the Code provision.

The lower court held that the lands could not be divided between the devisees so as to permit them to share equally in the division thereof without materially impairing their value and the value of the devisees' interest therein.

While the allegation as to divisibility was somewhat involved and the questions propounded the witnesses on this issue were complicated, there was a sufficient compliance with the Code provision in each instance.

But the proof is not satisfying. Two witnesses say the land could not be divided without materially impairing its value or the value of plaintiffs' interest therein; one witness testifies to the contrary. Before a court orders a sale of real property in which infants have a joint interest, the necessity for the sale must be shown, that is, its indivisibility must affirmatively appear. As said in McFarland v. Garnett, &c., 10 R. 91:

"Undoubtedly a tract of land containing as many as 106 acres may be divided without impairing its value. *Prima facie*, it is divisible without materially impairing its value, and the burden of proof is on the party contending contrariwise."

In Cherry v. Cherry, 162 Ky. 245, 172 S. W. 505, it was said that 159 acres and a fraction of an acre could be divided into three parts. See also Talbot v. Campbell, 23 R. 2198, 67 S. W. 53.

In the instant case the land owned by decedent comprised a total of 1,274 acres, purchased by him as four separate farms respectively of 675, 429, 124 and 46 acres. It would seem this land can be divided among those entitled thereto without injury. The proof does not convince us it cannot be done. The evidence was not sufficient to authorize a sale of the land on the ground of indivisibility.

In any event, before a division is made or sale of the real estate ordered the personalty should be first exhausted. It is necessary, of course, under the provisions of the will that to equalize the three shares the advancements must be reckoned with. Utilizing the amount in the executor's hands for this purpose, which should first be done, it will doubtless be found that the balance necessary to make the three parts equal will not be so great but what an adjustment can be made without impairing the value of the farm as a whole. It may be that by disposing of only one of the original farms, sufficient pro-

ceeds will be derived to equalize the beneficiaries and thus leave intact the remaining farms.

It is next urged that the power to sell infants' land is purely statutory, and if the statute is not complied with the sale is void. This is true, but an examination of the record convinces us that the statute has been complied with.

Appellant has properly proceeded in its endeavor to set aside the several judgments appealed from. Both the master and the lower court approved the allowance of $160.50, to the widow—this is represented by certain personalty taken by her. In so doing they erred, because the widow was one of the devisees under the will and was entitled to one-third only of the estate and her assignee could not claim any further interest therein, and in so far as the allowance of this item affects the infants' one-third interest in the estate it must be disallowed. Upon a return of the case the infants will be allowed their one-third of this $160.50.

The funds in the hands of the executor must be first exhausted in the adjustment of the advancements, and so applied as to make the beneficiaries equal so far as possible. The infants should be charged with interest from September 3, 1907, on all advancements made prior to that date to them or to their father, and not from the several dates of the payments as allowed by the master.

There is no provision in the will or account book authorizing the allowance of interest on any credits to any of the beneficiaries and none will be allowed.

It was testator's expressed desire that the persons mentioned in his will should share equally in the division of his estate, and though no cross appeal was prosecuted it would be inequitable to charge the infants with interest on advancements from a fixed date and allow the ruling of the master to stand charging Minnie E. Grimes with interest on the several advancements to her from the several dates thereof. In regard to interest on advancements, all will be dealt with alike, and Minnie E. Grimes will be charged with interest from September 3, 1907, on all advancements to her or her husband prior to that date. The note dated September 22, 1911, by its terms bears interest from its date. As to other items such as improvements, rents, timber and interest (except as herein mentioned) these are referred to the lower court for adjustment; the present state of the record renders it impossible for us to decree a proper settlement thereof.

So much of the land shall be ordered sold, perhaps one only of the original farms, or two of the farms, if need be, as may be necessary to put the beneficiaries upon an equal footing.

For the reasons given the judgments appealed from will be reversed, the sale of the 1,274 acres set aside, a new trial ordered and for further proceedings consistent herewith.