## Gray v. Gray, et al.

(Decided February 20, 1923.)

### Appeal from Meade Circuit Court.

1. Judicial Sales—Action for Sale of Land and Division of Proceeds.—While a tract of 183 acres of land is prima facie divisible into two or more parts, such division may be defeated by showing that the land lies in a bottom next to the river and is surrounded by other lands in such way as to render it inaccessible except over one route; that the tract is cut into three parts by a large, deep creek; that there is timber on only a small part of it, and that there are few building sites that are not overflowed by water.

2. Judicial Sales—Finding of Chancellor.—Where all the facts are submitted to the chancellor and he views the premises and renders the judgment, his decision upon the question of whether the land is susceptible of advantageous division will not be disturbed unless contrary to the weight of the evidence.

W. H. GRAY, CLAUDE MERCER and GUS BROWN for appellant.

JOHN P. HASWELL, J. H. TRENT, JR., and J. MORGAN RICHARDSON for appellees.

Opinion of the Court by Chief Justice Sampson—
Affirming.

This action was commenced in the Meade circuit
court by two of the sons and the widow of James Gray,
deceased, for a sale of his lands and a division of the
proceeds between his children and surviving widow, as
their interests might appear, on the ground that the said
lands were not susceptible of division in kind. One of
the sons, Walter H. Gray, resisted the sale, declaring
that he desired his portion of the land laid off to him.
By his counterclaim he also sought to have his brothers,
Wallace R. Gray and David Clarence Gray, charged with
certain loans by their father to them, as advancements;
and further he sought to have another tract of land
claimed by Wallace R. Gray adjudged to belong in part
to the deceased, James Gray, and the said lands divided
in kind or sold and the proceeds divided among the heirs
of the said James Gray. The trial court found and ad-
judged the lands to be indivisible and directed a sale of
the whole and a division of the proceeds among the three
sons and surviving widow, as their interests were made
to appear, and overruled each of the contentions of ap-
pellant, Walter H. Gray. From this judgment Walter
H. Gray appeals, insisting that it be reversed for the
following reasons:

(1) The burden of proof is upon the appellees, Wal-
lace R. Gray, D. C. Gray and Mary S. Gray, to show
clearly that the 183 acre tract of land alleged to be in-
divisible without injuring the value of the joint owners
was indivisible without material injury to the appellee,
Wallace R. Gray, and have failed to show such to be true.

(2) A tract of land containing 183 acres *prima facie*
is divisible without material impairment of the value of
three joint owners by setting apart to one joint owner
his interest therein and leaving the remainder in a body
to be sold.

(3) Under section 317, subsections 3 and 4 of the
Civil Code, the lower court abused its discretion by, on
its own motion, permitting the appellees to retake de-
positions in chief which depositions had been taken in
chief by the appellees after they had announced
"through" and after the appellant had taken his deposi-
tions, in permitting said appellees to retake depositions
and which was not requested by the appellees.

(4) The judgment of the lower court decreeing the indivisibility of the 183 acre tract of land in controversy is erroneous because it is not shown by the testimony clearly, or at all, that it is not divisible without injury to the interests of two of the joint tenants and one joint tenant, the appellant, objecting to the sale of the land as a whole and the judgment should be reversed.

(5) The judgment of the lower court denying the ownership of James S. Gray in and to an undivided three-eighths interest of 34½ acre tract of land, known as the Huffman dower, is erroneous because James S. Gray owned by purchase and deed said three-eighths undivided interest, which deeds were duly of record, and Wallace R. Gray's defense of fifteen years of adverse possession is not sustained by the facts because fifteen years did not elapse from the time said Wallace R. Gray purchased five-eighths interest in said tract up to the death of the dower holder, Mrs. Asneth Huffman, and fifteen years of possession did not elapse at any time in favor of said Wallace R. Gray as against James S. Gray, they being joint owners in the ratio of five to three in favor of Wallace Gray, after his purchase of said five-eighths interest and statutes of limitations can not be invoked in favor of Wallace R. Gray as against James S. Gray, or his heirs.''

The widow and two of the sons insist that the lands, though containing 183 acres, are so located, surrounded and shaped that they are not susceptible of advantageous division, and assert that a division of the lands into two or more parts will materially reduce the saleable value of each part, and that a sale of the whole will be to the substantial benefit of all interested parties. In support of their claim that the lands are not susceptible of advantageous division, appellees called fifteen or sixteen witnesses who, in addition to appellees, testified that the land which lies in the Ohio river valley next to the river and extends only a part of the way towards the hill on which the highway runs, cannot be divided without materially reducing the value of each part. These witnesses were among the most prominent citizens of Meade county, including the ex-county judge, ex-sheriff, and other ex-officials, all of whom it appears were at the time of the giving of their evidence and before the owners of farming lands in that county, and all of whom were more or less acquainted with the lands in controversy, being

residents of that particular district or having made a special examination of the lands before they were introduced as witnesses. Accompanying the record are two or three maps, one of them prepared by appellant Walter H. Gray, and the others by witnesses for the appellees. These maps show that the farm is made up of three tracts acquired by James Gray at different times. The large tract is a long rectangle containing about 101 acres. It is not very wide but runs for almost a mile from the edge of the river at right angles with the stream towards the hill. It does not extend to the public highway which runs along on the hill, but there is a passway from the highway to the farm entering at the farthest edge of the farm from the river, running down through the narrow tract towards the river until it reaches the mansion house about midway. From the mansion house towards the river there appears to be a passway or road more or less used. On the rear of the farm is a tenant house and barn and perhaps other buildings, and in addition there is a government lighthouse located on the river's edge. The other two tracts of land making up the farm lie in the bottom next to the river, and on the west side of the tract above described, but these two latter tracts do not extend as much as half-way from the river towards the highway. One of them contains 32 acres and the other about 50 acres. The 50-acre tract does not extend entirely to the river and is a long ways from the highway. Necessarily any road or passway leading from the 50-acre tract must pass over the 32-acre tract on to the end of the 100-acre tract, thence around a passway by the river and up towards the hill road, or pass through the 100-acre tract from the north end to the south end. The 100-acre tract is twice crossed by French creek, which makes a wide bend, cutting the said 100-acre tract into three parts. This necessitates at least two bridges because the banks of this creek are very steep. Both the 32-acre tract and the 50-acre tract lie north of French creek and between that creek and the Ohio river, and have no road or other passway except out over the 100-acre tract. On the west of these last two tracts are lands belonging to other individuals. To the north of the tracts is the Ohio river, to the east of the tracts are the lands of R. B. Shacklett, and to the south of said lands are the lands of several other individuals. There is but one suitable boat landing on the property and that

is at the rear of the 100-acre tract. The houses, barns and other improvements are so situated that it would be almost impossible to divide the lands so as to give a residence, or a site for a residence, to more than two tenants. The farm has no timber on it except on the hill on the south end next to the highway. This part of the farm is not very fertile and is suited to grazing but not to cultivation. If the lands should be divided there would be no timber on any but one tract, and this tract would be subject to a road or easement for the use and benefit of all the other tracts.

The circuit court having read the evidence on both sides, went to the lands and made a careful inspection thereof and an investigation of the surrounding conditions. An equal number of witnesses testified for appellant in substance that the lands could be divided without materially reducing the value or use of any of the tracts, and especially did they testify that the part to which appellant Walter H. Gray is entitled could be laid off and allotted to him without disadvantageously affecting the remainder of the tract, which they stated might be sold as a whole to as great an advantage as if the entire boundary should be sold together.

We have held in a number of cases that a tract of farming land containing a less number of acres than the one we have under consideration now, was *prima facie* divisible into two or more parts without injury or loss to any of the shares. Talbott v. Campbell, 23 R. 2198; Conner v. Cox, 15 R. 140; Kirk v. Crutcher's Admr., 145 Ky. 52. And it would seem that a tract of 183 acres would be *prima facie* divisible, and so it is. But a careful reading of the evidence in this case, coupled with a study of the maps accompanying the records, convinces us that the Gray lands are so surrounded and shaped that it is practically impossible to divide them into four tracts without materially reducing the value of one or more parts of such a division. Nor could the share of appellant Walter H. Gray be laid off and allotted to him without doing the remainder of the tract an injustice, or without reducing the value of the tract so assigned to him. He suggests that his part be taken off of the 100-acre tract next to the river, which is also next to a passway that would lead to other lands owned by him and this appears to be the only way such portion could be assigned to him without causing him great inconvenience as well as doing

the balance of the tract irreparable injury.    But if a share should be assigned from the north end of the said 100-acre tract it would take the only boat landing on the place and perhaps some of the most valuable improvements and leave the remainder of the farm in such broken, ugly and inconvenient shape as to materially reduce its vendible value.    All these matters considered, we do not think the trial judge erred in holding, after a personal examination of the property, that it is indivisible.

Another contention of appellant, Walter H. Gray, is that his father owned three-eighths of the 34-acre tract of lands known as the Huffman dower, and that this three-eighths interest should be sold and the proceeds divided among those entitled to participate in the division.    The said 34 acres is now owned by Wallace R. Gray.    It was laid off as dower in the Huffman estate. James S. Gray purchased three-eighths of the land belonging to the Huffman estate, and he and the heirs divided the land among themselves without the assistance of a court, each making a deed to all but the portion allotted to the grantor.    In this manner James Gray divested himself of all right and title to the lands of the Huffman estate, except the 50-acre tract which was assigned to him.    He, therefore, claimed no further interest in the lands and advised his son Walter R. Gray to buy the dower tract, which he did, paying a fair consideration therefor, and taking to himself an absolute deed.    Such conduct on the part of James Gray would have estopped him in his lifetime to set up claim to the dower tract had he desired to do so.    We think, however, that his deed made to the Huffman heirs for all but that part of the Huffman lands which was assigned to James Gray is a sufficient answer to the claim of appellant Walter H. Gray that three-eighths of the 50-acre Huffman dower tract belongs to the estate.

Appellant further insists that his father, James Gray, loaned money to appellant's brothers, Wallace R. Gray and David Clarence Gray, which were advancements and which should have been charged to the said sons in the settlement of the estate, and appellant admits he received from his father the sum of $290.00 which should be charged to him.    He says that one of his said brothers received about $3,000.00 from their father and the others received about $2,500.00 from their father, and

that no part of either of said sums has been paid to James Gray or to his personal representative. Both David Clarence Gray and Wallace R. Gray deny that they received any considerable sum of money from their father, but they admitted that they did borrow a few hundred dollars, some of which has been repaid but part remained unpaid at the time of the death of their father. They further averred and proved that about two years before the death of their father and at a time when he was in full possession of his mental faculties and knew what he was doing, he forgave each of his sons their obligation to him and directed that all the notes evidencing said indebtedness then held by him against his sons be destroyed, and they were destroyed, and the father did not thereafter claim anything against either of his said sons on account of said loans. We think the evidence shows that the father did forgive the said indebtedness to each of his sons, and having done so at a time when he had the capacity and power to so forgive, neither of the said sons is obligated to the estate in any amount on account of said loans.

Appellant insists that the trial court erred in allowing certain depositions taken on behalf of appellees read as evidence on the trial, because said testimony was taken in chief after appellees had closed their evidence in chief and after appellant had taken proof in chief, and he relies upon sections 587, 317 and subsection 3 of section 586. There is no subsection 3 of section 586. By section 587 it is provided that no exceptions, other than to the competency of the witness, or to the relevancy or competency of the testimony, shall be regarded, unless it be filed and noted on the record before the commencement of the trial and before or during the first term of the court after the filing of the deposition. We do not think said sections of the Civil Code support the contention of appellant. Nor do the facts shown by the record support his contention in this record. Section 317 has no relevancy to the subject as presented by this record.

There appearing no error to the prejudice of the substantial rights of appellant, Walter H. Gray, the judgment is affirmed.

Judgment affirmed.