## Owings v. Talbott et al.

(Decided Feb. 7, 1936.)

G. C. EWING and W. B. WHITE for appellant.

DANIEL W. DOGGETT for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

Mason G. Talbott and fifteen others sought to have 58.611 acres of land sold for partition under section 490, subsection 2, of the Civil Code of Practice. Mrs. Dollie Owings, who owned one-third of this tract, relying upon subsection 7 of section 494 of the Civil Code of Practice, resisted the sale and sought to have her one-third of the land laid off next to her adjoining property, after which she would have no interest in what was done with the two-thirds that will be left. The court ordered the tract sold as a whole, and Mrs. Owings appeals.

The provision of section 494, sub-sec. 7 of the Civil Code of Practice is mandatory. The property must be divided unless such division will materially impair the value of the property or the value of the plaintiff's interest in it, and upon the party resisting such partition in kind rests the burden of showing such impairment will result.

The amount of land in the tract involved is so near to 60 acres that all through this record it is referred to as 60 acres, so we shall do likewise. Some of the plaintiff's own a very small aliquot part of this land, one or two owning as little as one seventy-second part of it, but after there is laid off to Mrs. Owings her one-third or 20 acres, let us say, then the ones now owning one seventy-second part of the 60 acres will own one forty-eighth part of 40 acres, and such a cotenant will own the same number of square feet as before, for one seventy-second of 60 acres is the same in area as one forty-eighth of 40 acres, each is five-sixths of an acre, and the sole question is, Will a 40-acre tract sell as well

per acre as a 60-acre tract? That depends very largely upon the shape of the property, its accessibility to highways, and other factors. Therefore we have inserted in this opinion a map taken from the record.

## The Evidence.

Nine witnesses testify the property cannot be divided without loss, and fifteen testify that it can. This question in substance was frequently asked on behalf of the plaintiffs: ''Could that tract of land be divided between the twenty-odd heirs, who are the heirs at law of Tolliver P. Young, deceased, without materially impairing the value of said land?'' The oft-repeated appearance of that question detracts from the force of that evidence. There are not twenty heirs, there are but seventeen, and no one proposes to have this land divided into seventeen pieces. Mrs. Owings wants her one-third laid off to her, and proposes when that is done to withdraw from the case with her one-third and to allow the remaining sixteen to do with the other two-thirds as they please.

There is an old residence on this farm which is approximately located on the map, and near it is a spring also located approximately, while on the west end of this tract there is another spring marked ''water.''

This old residence has little, if any, value, so we may dismiss it as being of no importance in determining whether or not this land is divisible. The appellees

insist this land cannot be divided because, as they say, Mrs. Owings will get the spring near the house and that the remainder of the farm will be valueless without that spring.

First, we do not know she will get that spring, and, next, it is by no means established that the remainder of the farm will be valueless without it. Mr. Arnold testified he was on this farm during a dry time and saw the spring on the western part of the farm marked "water," and it was 4 or 5 feet wide, 10 feet long, and 4 or 5 feet deep and was a permanent spring. Ray Hon rented this farm for four or five years, and he testified that in 1931, which was just after the great drought of 1930, it furnished all the water he needed for his stock and more, and in his five or six years' stay on the farm it had never been dry. James Alexander had rented this farm, and he testified this spring ran all summer, and was not a wet-weather vein. Three others testify about this spring. These depositions were filed February 18, 1935, and the plaintiffs made no effort to disprove what these witnesses said about the spring marked "water," although the judgment was not entered until May 14, 1935.

The evidence indicates this land is worth $20 or $25 per acre; the better land being on the west end.

### The Chancellor's View.

The judge, after reading the pleadings and the evidence, and without notice to, request from, or knowledge of any one, inspected the premises himself, and the first and only knowledge any one had of it was imparted by this which is inserted in the judgment: "It is adjudged by the court that from a personal inspection of the tract of land and from the proof taken herein, both upon the depositions of both the plaintiffs and of the defendant, Dollie Owings, the said tract of land cannot be divided among the various heirs and owners without materially impairing the value of each individual interest owned and held therein, and that the said tract of land being so small and the heirs and owners so numerous, it is adjudged that it be sold as a whole."

### Our Conclusions.

The evidence does not give that assurance of re-

sulting impairment of the remainder that would justify a refusal of an allotment to Mrs. Owings of her one-third in kind.

The court's view of the land which appellees insist upon so strenuously does not require us to overlook the evidence. How thorough that inspection was and what the court learned this record does not disclose. How other courts have said such inspections should be made is set forth in 64 C. J. p. 1202, sec. 1007, and the power of the court to make them and the purpose for which they are made are set forth in same book, pp. 1200 and 1201, secs. 1005 and 1006.

They are permissible to enable the court to understand and apply the evidence; they do not supplant the evidence adduced or supply evidence omitted. To sustain appellee's contention and say, the court saw, and we know not what he saw, therefore we must affirm the judgment, would be equivalent to denying appellate relief. The presumption of correctness applies to everything the record discloses was done, but that is as far as it goes.

The appellees cite the case of Gray v. Gray, 197 Ky. 777, 248 S. W. 172, 173, in support of the court's view, and quotes this from that opinion: "The circuit court, having read the evidence on both sides, went to the lands and made a careful inspection thereof, and an examination of the surrounding conditions. * * * All these matters considered, we do not think the trial judge erred in holding, after a personal examination of the property, that it is indivisible." We have read that opinion carefully, and there is nothing in it to show the chancellor there rested his judgment on what he saw, as was done in this case. Moreover it is agreed now in this case that Judge Layman in the Gray Case was asked to view the premises, and, when he did so, was accompanied by the appellant and one of the appellees.

## Our Former Holding.

In the case of Shaw's Guardian v. Grimes, 187 Ky. 250, 218 S. W. 447, there were 1,274 acres involved, and this court set aside a sale and ordered the one-sixth of each of the Shaw children to be laid off to them. In

the case of Conner v. Cox, 22 S. W. 605, 15 Ky. Law Rep. 140, there were 165 acres. We reversed the judgment and directed that Conner's one twenty-seventh be laid off to him. In the case of Cherry v. Cherry, 162 Ky. 245, 172 S. W. 505, there were 159 acres to be divided among three persons, and we reversed the judgment and directed John's one-third be laid off to him. In the case of Prewitt v. Hurt, 178 Ky. 526, 199 S. W. 33, there were three tracts involved; one contained 101 acres, another 49 acres, and a third 99 acres. In the first two Mrs. Hunt owned one-eighth and in the 99 acres she owned one sixty-fourth, and we reversed the judgment that her land might be laid off to her. In the case of Kirk v. Crutcher's Adm'r, 145 Ky. 52, 139 S. W. 1076, we reversed the judgment and directed 245 acres to be divided among 8. In the case of Talbott v. Campbell, 67 S. W. 53, 23 Ky. Law Rep. 2198, there we reversed the judgment and directed 100 acres to be divided among three persons.

In doing what we did in the cited cases we were but following the general rule, which is thus stated in 47 C. J. p. 442, sec. 436:

"As between a partition in kind or sale of land for division, the courts will favor a partition in kind, since this does not disturb the existing form of inheritance or compel a person to sell his property against his will, which, it has been said, should not be done except in cases of imperious necessity. It is no objection to a partition in kind that some of the cotenants prefer a sale to a partition."

A well-considered case on partition in kind involving a view of the premises by the trial court is Thompson Estate Co. v. Kamm, 107 Or. 61, 213 P. 417, 28 A. L. R. 722. It is followed by valuable notes.

A glance at the map shows Mrs. Owings owns property adjoining this farm, and she is entitled to have her one-third laid off adjoining the land she now owns if that can be reasonably done. Graham, etc., v. Graham, 8 Bush, 334; Conner v. Cox, 22 S. W. 605, 15 Ky. Law Rep. 140; Talbott v. Campbell, 67 S. W. 53, 23 Ky. Law Rep. 2198; Leslie et al. v. Sparks, 172 Ky. 303, 189 S. W. 463; Prewitt v. Hurt, 178 Ky. 526, 199 S. W. 33; Howard v. Long et al., 238 Ky. 822, 38 S. W.

556

(2d) 951; Kirk v. Crutcher's Adm'r, 145 Ky. 52, 139 S. W. 1076; 47 C. J. p. 501 sec. 580.

Judgment reversed for consistent proceedings.