## Tuggle et al. v. Davis et al.

Oct. 20, 1942.

Guy L. Dickinson and J. J. Tye for appellants.

Victor A. Jordan, J. William Jordan and J. Leonard Davis for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

This suit is prosecuted by two brothers and a sister against another sister for partition of 210 acres of land in Knox County. A special chancellor adjudged the land could not be fairly divided among the four owners because of the existence of coal and the probability of gas underneath it. The case is before us for review on the appeal of the plaintiffs.

Before considering the evidence, it is well to note the rights and obligations or burdens of the parties in establishing their respective contentions. Ky. Rev. Statutes, 381.120 (Section 2438, Ky. Stats.) declares that "Joint tenants may be compelled to make partition." Judicial partition is authorized and the proceedings defined by Section 499 of the Civil Code of Practice. This provides that any owner desiring a division shall file a petition, having certain allegations, against his co-owners and pray judgment therefor. The factor of impairment of value does not here appear. But partition implies equality. So it is provided in Section 490 of the Civil Code of Practice that "if the estate be in possession and the property cannot be divided without materially impairing its value, or the value of the plaintiff's interest therein," jointly owned land may be sold by order of a

court of equity in an action brought by an owner of a vested estate therein. Section 494, subsection 7, of the Civil Code of Practice declares that if one party objects to a sale of jointly owned land his share shall not be sold but set apart to him and the rest of the land sold, if such division and sale can be made without materially impairing the value of the property or of the interest of the parties therein. See, for interpretation, Conner v. Cox, 22 S. W. 605, 15 Ky. Law Rep. 140; Leslie v. Sparks, 172 Ky. 303, 189 S. W. 463; Owings v. Talbott, 262 Ky. 550, 90 S. W. (2d) 723. In this suit the plaintiff, although seeking only a partition, alleged that the property could be divided without materially impairing its value or the value of any interest therein. The defendant denied the allegation and by counterclaim sought a sale for a division of the proceeds. She further affirmatively averred that the property could not be so divided, and asked its sale. Without the allegation in the petition of susceptibility of division, undoubtedly the burden rested upon the defendant to prove her allegation and establish the fact that a division could not be had without impairment of value because Sections 525 and 526 of the Civil Cole of Practice prescribe that a party holding the affirmative of an issue must produce evidence to prove it, and place the burden of proof upon the party who would be defeated if no evidence were given on either side. Cherry v. Cherry, 162 Ky. 245, 172 S. W. 505. That is the technical rule. However, the practical rule, somewhat in disregard of the technical rule, requires that it be proven that land which prima facie is susceptible of partition among joint owners cannot be divided without injuring or prejudicing the interests of others. Public policy favors a division of land in kind rather than of the proceeds unless substantial injustice will result even though one or more of the owners prefer a sale to a partition. This rests upon the ground that partition does not disturb the existing form of inheritance, as in the instant case, or compel a person to sell his property against his will. Kirk v. Crutcher's Adm'r, 145 Ky. 52, 139 S. W. 1076; Owings v. Talbott, supra; Hagar v. Hagar, 276 Ky. 286, 124 S. W. (2d) 45.

We examine the evidence under the influence of this attitude as to the burden. The tract was devised to these parties by their father, who died in 1885, subject to the life estate of their mother, who died in 1939. It is regular in shape and divided in the center by a valley through

which run the double tracks of the L. & N. Railroad Company, a county road, and a creek. The testimony as to the quantity of bottom land varies from 8 to 30 acres. There is a scrubby second growth of timber on the mountain sides. There are no improvements. The preponderating testimony is that in this vicinity a small parcel, with a building site and a little land capable of being cultivated, sells more readily and to greater advantage than a tract as large as 210 acres. The inconvenience and expense of providing cross-overs seem to be taken care of in a contract with the Railroad Company made long ago. As far as the surface is concerned, there is no doubt that the land may be fairly and equitably divided among the four owners. In fact, before the suit was filed there had been an oral agreement to partition. A surveyor laid it off into four parallel rectangles, giving each a part of the bottom land, which seems to be practical and fair, although the defendant expresses the view that it is not. The appellant, Henry B. Tuggle, owns property adjoining on the east, and the plaintiffs prayed that his part be set off next to his other land. Although denying fair divisibility, the defendant in her answer and counterclaim referred to this tentative or proposed partition and alleged that it had been agreed that Henry should have the portion adjoining his present land and that she should have first choice among the three parcels; that she had chosen Parcel No. 2, but the plaintiffs had refused to carry out their agreement. In this pleading she states that she is ready to accept that parcel even though the division would impair the value of the property and of her interest therein. The plaintiffs in their reply asked judgment approving the award of Lot No. 1 to Henry, and prayed that commissioners make allotments to the two sisters or that they draw for the parcels, the other brother, Ralph, being willing to accept what was left. Thus, the real difference between the parties is only whether the defendant should have first or second choice among the three parcels after Henry's part is cut off.

On both sides of the valley there is a seam of coal, called the "Blue Gem," which appears to be present throughout Knox County. The evidence places the thickness of this seam to be from 18 to 26 inches. It is pretty well shown to average about 24 inches, and to be of good quality, with a solid heading of sandstone. An adjoining land-owner mines the vein for domestic uses, as is quite generally done in the county. There are a few

wagon or truck mines getting out the coal for local consumption. But the thinness of the seam makes it too costly for general commercial development. During the first World War mining the vein was profitable, but it is testified that since then several efforts to do so had resulted in financial failure. The coal could be mined by. modern mechanical contrivances, operated by electricity, but the process at this point would be too costly.

There is another vein of coal on the land, called the "North Jellico," which lies about 80 feet above the Blue Gem seam. An experienced mining engineer expressed the opinion that there are about 70 acres of the North Jellico coal lying on both sides of the valley. This coal is about 42 inches thick and could probably be developed commercially according to the defendant's proof. If it could, it would be more advantageous to lease the entire property as a unit rather than to have it divided into small parcels. However, there is substantial evidence to the effect that on this land the North Jellico seam is faulty, and a little evidence that some years ago an attempt to develop it proved unsuccessful. At any rate, no lease of the coal has ever been sought and there are no prospects of any development any time in the near future.

It is said that gas lies under all of Knox County but that is disputed. There is a producing gas well about two miles away on one side of this propery and another three or four miles distant on the other side, and there is evidence that this land lies in substantially a straight line between them. Some years ago during a drilling boom, a well was drilled within 200 or 300 yards of this land and a showing of oil was obtained, but the well was abandoned as unproductive. The witnesses differ as to whether these producing wells are "big" or "little," and there is no geological evidence tending to show this is probably oil or gas land. This indefinite evidence establishes only a springing hope rather than a reasonable expectancy. As it has been with reference to the coal, it does not appear that any one has been interested in leasing this property for oil and gas development. The opinions are conflicting whether four parcels of approximately 50 acres could be more advantageously leased than the entire 210 acres.

As stated, the judgment of non-divisibility rests upon the opinion that "the land probably has gas in pay-

ing quantities underneath it, as well as one workable seam of coal.'' To sustain the judgment the appellee relies upon the abstract rule that mining property is deemed not susceptible of partition by area, because of likely detriment to the interest of one or all of the owners, where there is an apparent uneven distribution of the minerals or only a conjecture that the division would be uniform in character and value; particularly so of known oil and gas land because such minerals are fugitive in nature and uncertain in place. Warfield Natural Gas Company v. Cassady, 266 Ky. 217, 98 S. W. (2d) 495; Osborn v. Osborn, 267 Ky. 757, 103 S. W. (2d) 262; Willis' Thornton on Oil and Gas, secs. 436, 437; Gulf Refining Company v. Hayne, 138 La. 555, 70 So. 509, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130; 47 C. J. 447. Our application of the rule has been to facts different from the present.

In the coal land cases it was not shown that the coal was unworkable for substantial commercial purposes or some other controlling factor or condition was presented. In Leslie v. Sparks, 172 Ky. 303, 189 S. W. 463, partition was denied and a sale ordered where the principal value of the land was two undeveloped coal seams and there was only one available house site. Of like class is Napier v. Napier, 233 Ky. 304, 25 S. W. (2d) 735. The cases are distinguishable from the case at bar for in them there was no proof of the extent or location of the coal or of the important factor of probable non-development in a substantial degree. In Trimble v. Kentucky River Coal Corporation, 235 Ky. 301, 31 S. W. (2d) 367, coal leases had been executed to persons who had no interest in the surface of the land, and the joint owners were numerous. It appeared to be practically impossible to make an equitable division in kind.

In each of our cases involving oil and gas property, it will be found that the land was under lease or there had been a severance of part or all of the estate in such minerals from the estate in the surface and the interest of the owners of the surface would have been affected, at least speculatively, by partition. Union Gas & Oil Company v. Wiedeman Oil Co., 211 Ky. 361, 277 S. W. 323; Trimble v. Kentucky River Coal Corporation, supra. The application of the rule as to non-divisibility of oil and gas lands is clearly exemplified in Warfield Natural Gas Company v. Cassady, supra, where one company owned

a 2/10ths interest in the coal and another a 3/10ths interest in the gas, and there were several owners of the surface and the remaining interest in the minerals. The property was in proven territory and the difficulties encountered in an attempt to divide it in kind, as suggested and stated in the opinion, led to the conclusion that the property of necessity should be sold rather than partitioned. That is far from this case.

The rule in respect to non-divisibility of land containing minerals has its correlative, obviously. It is of general acceptation that partition of mining property will be decreed whenever it is possible to divide it without great prejudice to any of the owners. 36 Am. Jur., Mines and Minerals, sec. 205. Thus, as is said in Willis' Thornton on Oil and Gas, sec. 436:

"Where the mine has not been opened, the right to partition of land having upon it solid minerals has been recognized; and it will be decreed unless the mineral is so situated that a probably fair division of it cannot be made by dividing the surface of the land. All things being equal, as between a partition and a sale, a partition will be decreed."

And in Section 437 of that excellent work:

"There is no doubt that an action of partition lies to divide undeveloped and supposable oil or gas lands, just as it does in case of lands containing solid minerals; for it cannot be known, owing to the peculiar character of gas or oil as a mineral whether the land to be divided is actual gas or oil lands; and to refuse partition on the theory that it may be, would be for the court to enter upon the domain of mere speculation or supposability."

In the instant case, we are of opinion that the existence of oil and gas is too speculative to be given consideration. The existence of coal is certain, but the possibility of development upon a substantial commercial scale is remote. Since, as we have above outlined, any of the joint owners has a legal or, as is sometimes said, an inherent right, if it be practical, to have his interest in property set aside to himself so that he may become the sole owner of his separate and segregated parcel, unless it is proven that such division would injure or greatly prejudice the right of the other owners; and since the

sole defendant and her husband, who contingently object to partition by their pleading, concede divisibility, subject to their quite selfish condition of being given first choice, we are of opinion the judgment should have ordered partition instead of a sale.

The judgment is reversed with directions to adjudge a partition, the mode and procedure to be determined by the chancellor under the pleadings.