# Toledo, Wabash & Western Railway Company

*v.*

# John B. Hunter *et al.*

50   325
23a 419
50  325
28a 112
50  325
141  68
50    325
108a ²669

1.  Obstructing the overflow of a water course—*of injury thereby to after acquired rights.*  A railroad company filled up what was, at one time, an open trestle work in the embankment of their road over the bottom land bordering upon a river, and thereby, in some degree, retarded or obstructed the flow of the water in a time of flood, causing it to spread over a greater surface above the embankment.  Upon ground thus caused to be overflowed, a party subsequently erected some cattle sheds, in which were placed some cattle belonging to a third person, under a contract by the owner of the sheds to feed and stable them there.  In an action by the owner of the cattle to recover of the railroad company damages arising from injury to the cattle, caused by the obstruction so created by the company, and the consequent overflowing of the ground occupied by the sheds in a time of flood, it was *held*, the plaintiff had no right of action, the cattle being there only under a contract with the owner of the premises, to whom alone, if to any one, was there any liability.

2.  But the cattle were placed in the pens, after the trestle work was filled up, so that the owner acted with a full knowledge of that fact, and of the situation of the feeding place, and the company had done nothing after the rights of the owner accrued, whatever they were, to injure them, and therefore incurred no liability to him.

Appeal from the Circuit Court of Sangamon county; the Hon. Edward Y. Rice, Judge, presiding.

This was an action on the case, by Hunter and McNeil, against the Toledo, Wabash & Western Railway Company, to recover damages arising from injury to a lot of cattle, caused by the waters of the Sangamon river overflowing the ground, occupied by the plaintiffs, in a time of flood, such over-flowing being the result, as is alleged, of the filling up by the railroad company, of an open trestle work in an embankment of their road across the bottom land bordering upon the river.

The declaration contained six counts, the last of which sets forth substantially, the alleged cause of action. The 6th count states:

"That the plaintiffs, on the 25th day of November, 1866, and from thence hitherto, were the owners of 1,500 head of cattle, which they were feeding and fattening in stables and upon lands in the lawful possession of said plaintiffs, near the Sangamon river, and the said plaintiffs, so being in the lawful possession of said stables and lands, and the owners of said cattle, the said defendants negligently, willfully and wrongfully, filled and totally obstructed a certain opening in the embankment raised by the defendants across the bottom land of the Sangamon river, said opening being a space through which a portion of the water of the Sangamon river had of right passed before the total obstruction of the same, and through which the water of right should pass in case of freshets in said river, said opening being a reasonable, necessary and practicable opening and passage way for the water of said river in times of freshets. And on the 17th day of February, 1867, a freshet existing in said river, the water thereof flowed over said lands, and into the said stables of the plaintiffs, and among and upon said cattle, in consequence of said embankment being filled up and obstructed, and the said stables and the said cattle were injured," &c.

The general issue was pleaded, and upon the trial much testimony was taken, which it is not necessary to consider. The jury returned a verdict in favor of the plaintiff, assessing his damages at $6,500, and judgment was rendered thereon. The defendants thereupon took this appeal.

Messrs. PALMER & HAY, for the appellants.

The cases cited in Redfield on Railways, 156, state and establish the true rule applicable to this case: "In the absence of statutory provisions upon the subject, railways are

not liable for necessary consequential damages to land owners, no portion of whose land is taken, when they construct and operate their roads in a skillful and prudent manner."

But if the evidence does not establish that the plaintiffs had no interest, possessory or otherwise, in the stables, it does prove that they had no interest until the 10th of November, 1866, long after the "wrongful acts" complained of were done. The case of *Ill. Central R. R. Co.* v. *Allen*, 39 Ill. 205, is in point.

Messrs. HERNDON, MATHENY & ZANE, for the appellees.

The Sangamon river being a natural water course, the defendants in error had the right to occupy the land upon its borders with their stable and cattle, with reference to the river as it was regulated and controlled by natural laws ; and the plaintiffs, by interfering with the natural flow thereof, and by throwing the water into the stables, became liable for all damages in consequence thereof. *Stout* v. *McAdams*, 2 Scam. 68–9 ; *Fletcher* v. *The Auburn & Syracuse R. R. Co.* 25 Wend. 464 ; *Boughton* v. *Case*, 18 Johns. 405 ; *Bellinger* v. *The N. Y. Cent. R. R.*, N. Y. R. (Court of Appeals, Smith 9), 45 and 52 ; Hilliard on Torts, vol. 1, sec. 6, 89, and sec. 4, 672.

The company are liable to damages for injuries caused by flowing backwater in a great freshet, in consequence of their bridges damming up the water, although the bridges were constructed by another company before the appellants became the owners of the road, though there may have been no request to them to remove the obstruction. Redfield on Railways, 3d par., sec. 17, pp. 170 and 171 ; *Brown* v. *The Cayuga & Susquehanna R. R. Co.* 2 Kernan's R. 492.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

There can be no doubt that filling up, by the railroad company, what was, at one time, an open trestle work in the embankment of their road over the bottom, retarded or obstructed in some degree, the flow of the water in a time of flood. At such time, the river, not confined to its natural channel, spreads over a large surface, and must have vent somewhere. By filling up this open trestle work, that vent was closed, and the water forced to the channel of the river under the railroad bridge and to the opening near it at the west end. Such portions of the water as could not escape by these passages, accumulated above them, and thus interfered with the cattle sheds, built as they were, upon low land a short distance above the bridge. That the plaintiffs were injured thereby to some extent is established by the proof, but it does not follow, they have a right of action against the appellants for such injury.

It appears P. L. Howlett built and owned these cattle pens, and according to his testimony the opening in the embankment was filled up by the railroad company, before appellees had any rights in the pens, and all the right they had was under the contract with him, who says : " My contract was to feed the cattle by the month, furnish all the slop they could eat and stable them at three dollars per month for each."

It is evident from this testimony, that the pens were in the possession of Howlett, and to which appellees had not the shadow of a right. Their cattle were there under a contract with the owner to feed and shelter them by the month, at a certain price per head.

The parties to this contract, knew, when it was made, that the river, on which the pens were situate, was liable to annual overflow, and appellees consented their cattle should be placed in them exposed to this annually recurring danger.

The case might be different had the culvert been filled up after appellees' cattle were put in the pens. As it is, they acted with their eyes open and with full knowledge of the situation of the feeding place, and appellants have done

nothing, since appellees' rights accrued, whatever they may be, to injure them. *Ill. Cent. R. R. Co.* v. *Allen*, 39 Ill. 205.

The embankment in which the culvert was placed and filled up by appellants, was erected by the State in the prosecution of its system of internal improvements as early as 1839, and it is in proof by several witnesses, that the river in times of freshets in several years, overflowed the ground, where these pens were afterwards erected, three feet in depth, so that it is manifest, filling the culvert contributed but little if any thing to the injury to the pens. Besides, from the plat introduced into the record, it appears that just above the railroad bridge and pens, there are several large bends in the river which must affect materially the flow of the water in time of freshets, retarding it, and causing it to accumulate in volume at particular points.

The proofs in the case show an unfortunate location of the pens, and fail to show any act of the appellants causing an injury to appellees, for which they should be responsible to appellees. If there be a liability to any person, it would appear to be to Howlett, and not to appellees, for the reasons we have given.

No right of action having been established against appellants, the judgment must be reversed and the cause remanded.

*Judgment reversed.*