# Chesapeake & O. Ry. Co. v. Salyer.
## Same v. Rice.
## Same v. Hester.

(Decided Feb. 18, 1938.)

LeWRIGHT BROWNING and KIRK & WELLS for appellant.
HOWES & WALKER for appellees.

Opinion of the Court by Morris, Commissioner—Reversing.

The above three cases were tried together below, all being suits seeking damages of appellant on account of injury by the overflow of water on their properties. Ap-

pellees Salyer and Rice sued for damages for injury to
real estate; Hester sought damages for injury to per-
sonal property.

In his petition Rice and his wife alleged ownership
of a house and lot in Johnson county, on the waters of
Jennie's creek. It was asserted that Big Sandy & Ken-
tucky River Railroad Company had "in the construc-
tion, operation and maintenance of their railroad, care-
lessly and negligently constructed, and have since care-
lessly and negligently maintained and operated a bridge
over Jennie's Creek * * * and a large fill on the north
side of said creek below and in close proximity to the
house and lot owned by plaintiffs * * * and that by
reason of the negligent and careless construction, main-
tenance and operation of said railroad bridge and fill,
large quantities of water have accumulated above said
bridge and inundated plaintiffs' lot and the lower por-
tion of their dwelling house; flooded their well and out-
houses to such an extent that the *vendible* and *rental*
value thereof have been completely destroyed, to their
damage in the sum of $1500.00."

Later plaintiffs filed amended petitions in which
they alleged "that within five years last past, by reason
of the alleged careless and unlawful construction, main-
tenance and operation of said railroad bridge and fill,
the defendants have wrongfully, carelessly and negli-
gently permitted drift * * * and debris to collect and
accumulate in the creek, and within the aforesaid aper-
ture provided by them under said bridge for the pas-
sage of water, and by reason thereof, and the negligent,
careless construction and maintenance, the flow of water
in the creek has been held back and caused to accumu-
late and inundate plaintiffs' property; that such has
caused the channel of the creek to fill up and render it
insufficient to carry off the water draining therein, and
overflow, leaving its channel bed, and stand upon plain-
tiffs' property; to wash away the soil and deposit debris
thereon." So much of the petition as sought recovery
of the Big Sandy Railroad was later dismissed and the
trial proceeded against appellant, which filed answer
denying the allegations of the petition. By amended an-
swer, it pleaded that any alleged damage to plaintiffs'
property was occasioned solely by rains or floods, "of
unusual occurrence in the vicinity, and which could not
have been reasonably anticipated by persons of ordi-

174

nary experience and prudence." This was denied by reply. At this point appellant moved the court to require plaintiff to elect as to which cause of action it would further prosecute, whether that for "temporary" or "permanent" damages, as set up in the petition as amended. Without waiving its motion, it filed a second amended answer, denying the allegations of the petition as amended, pleading that the bridge and fill referred to in petitions constituted a permanent structure, erected by its predecessors (Big Sandy) more than twenty years prior to the filing of the suit by plaintiffs, thus bringing to its defense the five-year statute of limitation.

The court later overruled appellants' motion to require the plaintiff to elect, with exception by appellant. A reply denied the allegations of the amended answers, thus bringing about issues. The pleadings, procedure, motions, and rulings thereon were identical in the Salyer's case; the only difference being in amount of damages sought for injury to a different lot.

With the issues thus formed, and the actions consolidated, after proof and instructions, the jury returned a verdict for Salyer in the sum of $750, and for Rice $700. Motions for a new trial were overruled, and appellant is urging a reversal of the judgments entered in accord with the verdicts. The sole contention is that the court erroneously overruled its motions for a directed verdict made at the close of the testimony, insisting that its plea of limitations should have prevailed as a matter of law.

It is unnecessary for us to go into minute description of the bridge and fill, alleged to have caused the damage, nor the history of the building thereof. Reference to the case of Chesapeake & O. Ry. Co. v. Caudill, 270 Ky. 107, 109 S. W. (2d) 20, 24, will demonstrate that therein was involved a suit by Caudill against the appellant here, on account of damages from a similar structure crossing the same creek. Reading the opinion, we gather that the pleadings were different from those in the instant cases. It was there pleaded that the structure in question was a temporary one (describing it), negligently constructed. It was also pleaded that repair work in 1935 by the replacement of certain piling was negligently done, causing the overflow and resulting injury. Appellant asserted that the structure was not

temporary, but permanent. The issues were thus joined in that case, and upon trial the complainant introduced no proof tending to show the extent of his injury or damage, based upon the measure to be applied when the damage sought arises from injury caused by a temporary structure. All the evidence introduced in that case by complainant was directed, not to showing or fixing the amount of temporary damage, which by his pleadings he was only entitled to recover, but to damage suffered as if caused by a permanent structure. In the Caudill Case the court, by various instructions given, permitted the jury to determine from the evidence whether damages should be awarded for injury caused by a permanent or a temporary structure, and we reversed the case holding that the court from the pleadings and proof should not have permitted the jury to consider "temporary damages," because there was no evidence tending to support plaintiffs' claim of such damage.

In that case we quoted from Louisville & N. R. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121, giving what this court then and has since conceived to be "practical and sound rules to be followed in the matter of the introduction of evidence, and the proper instructions covering" the measure of damages in such cases, as follows:

"That a single recovery must be had for all damages resulting from a permanent structure properly built; (2) that for a structure unlawfully or negligently built, though intended to be permanent, recurring recoveries for such improper or negligent construction may be had as the injuries occur; (3) that for a temporary structure recurring recoveries may be had as the injuries occur; and (4) that whether the construction was negligent is a question for the jury under the evidence, if the same be conflicting. Madisonville, H. & E. Railroad Co. v. Graham, 147 Ky. 604, 144 S. W. 737. But there is yet another class of such cases, to which this belongs, recognized and accurately described in that opinion; and that is where the structure, though permanent and negligently constructed, cannot be repaired or remedied so as to avoid the recurring injuries, at a reasonable expense, or where the expense of repairing or remedying would be so great as to authorize the railroad company, in the exer-

cise of its right of eminent domain, to condemn the property so injured by the negligent structure, then there must be a recovery once for all.''

Thus it is seen that in the instant case appellees might have been entitled to recovery for damages caused by a permanent structure properly built, the recovery to be once for all, and sought within five years from the date of completion thereof, or from the date of the first injury, or from the date when it became apparent to complainant that there would, on account of the structure, be resulting injuries. Chesapeake & O. Ry. Co. v. Robbins, 154 Ky. 387, 157 S. W. 903; Illinois C. Ry. Co. v. Haynes, Ky., 122 S. W. 210; Big Sandy & C. Ry. Co. et al. v. Thacker, 270 Ky. 404, 109 S. W. (2d) 820. In the recent case of Louisville Hydro-Electric Co. v. Coburn, 270 Ky. 624, 110 S. W. (2d) 445, 447, we held that although a structure be unlawfully built by a public service corporation, if it is intended to be permanent and cannot be repaired or remedied so as to avoid recurring injuries by flooding adjacent land, at a reasonable expense, there must be a recovery once for all. We further said:

"The court properly instructed the jury, as a matter of law, that the embankment was a permanent structure. The appellee testified that the first injury to his property caused by the presence of the embankment occurred in the spring of 1927. That being true, the 5-year statute of limitations applied, and the court erred in overruling appellant's motion for a directed verdict in its favor.''

Likewise the appellees might have recovered under rule (2), laid down in the Bennett Case, supra, for injuries caused by a permanent structure, unlawfully or negligently constructed, such recovery being in the same measure as where the injury is by a temporary structure, that is, for damage caused by each recurring injury, and limited to five years before such injury. The measure, however, in such case to be, not the difference in the fair market value just prior to and after the injury, but the diminution in the value of the use and enjoyment of the property, or its rental value. City of Richmond v. Gentry, 136 Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255.

However, we need not further discuss the applica-

ble rules relating to the measure of damages, the application of the statute of limitation, nor the distinctions between the measures when applied to the particular injury, nor to undertake to determine whether the structure here in question was of a permanent or temporary character, as defined in Dugan v. Long, 234 Ky. 511, 516, 28 S. W. (2d) 765, and other cases. Here the parties treated the structure as a permanent one. The appellant so pleaded, and there is no sufficient pleading denying this allegation.

In the introduction of proof as to the damages, recovery was limited by the parties, their attorneys, and by the court in its instructions, to the "fair and reasonable market value of said house and lot * * * immediately before any injury found to have occurred to said lot and house within five years next before October 29, 1935." The injury for which all parties were seeking damages occurred in April or May, 1935. While we are of the opinion, after reading the original and amended petitions, that the court should have sustained appellant's motion to require appellee to elect, his failure to do so is now of no consequence, since all the parties treated the damages recoverable, by injury from a permanent structure. The parties having elected to thus seek recovery, their election must stand. In Louisville & N. Ry. Co. v. Conn, 179 Ky. 478, 200 S. W. 952, we held that if the complained of obstruction is treated by the parties throughout the trial as being permanent in its nature, and the trial is conducted upon that theory, the court should instruct upon the theory adopted by the parties, and not the other. Central Consumers Co. v. Pinkert, 122 Ky. 720, 92 S. W. 957, 29 Ky. Law Rep. 273, 13 Ann. Cas. 105.

Both Salyer and Rice owned property in the immediate neighborhood, on the same side of Jennie's creek, Salyer's lot being approximately 300 feet above the bridge and Rice's property still further up the creek, and there can be little doubt from the proof (and it is not otherwise contended) but that each suffered damage by the high overflow in the spring of 1935.

Salyer acquired a limited estate in his property by deed in 1905 or 1906 and perfected his title in 1925. He said that he came into full possession some "seven or eight years ago." It appears that Rice acquired his property in 1903, since which date, with the exception

of a few years, he has occupied it. Mr. Salyer, testifying, said that he had known the properties in question for 35 or 36 years, and that water never got up over the properties "until after the bridge was built." He moved on his property in 1906, but lived there only a short time. He said the water had gotten into his house prior to five years before the filing of the suit. It had gotten into the house before 1925. "It was some years after the bridge was built." He said that after the railroad was built, "the banks had begun to build up, and the water continued to rise higher each year"; that the tide in 1935 was not any higher than they had previous to the time "I told you about it getting in my beds," and this was about 1929. "There was then backwater and mud in the house. I don't think there has been many spring seasons but what the water got up in and around the bank." He excepted 1930, when there was a drouth. He remembered very definitely that while his aunt lived in the property, "eight or ten years ago, the water got in the house and ruined all her household goods." He insisted that he saw water in the house, "past seven years ago, longer than that." And as to the damage to his property, or what "destroyed its value," he said the damage in the last four or five years was "more than any other time." He was positive that there had been more damage since he "bought the boys out (1925) than I ever did know of, but I had bought the property and had to keep it."

Appellee Rice did not testify, but his brother, who had looked to the institution and conduct of the suit for him, said he was sixty-eight years of age and had known Jennie's creek—in the neighborhood of the bridge—all his life. He was asked:

"In all that time you only know of one flood or tide that was as high as this particular flood in March 1935?"

He answered:

"Going back further, different times it was higher than it was this time. In May 1927 it was several inches higher, and then on back a year or two before the railroad was built, it was bigger, and then back thirty years, in February, there was still a bigger tide than any of these, according to the fences that was washed off along the banks. The

high tide in May 1927, it was several inches higher than it was in this March tide.''

He thought it got in Dave Rice's house in 1927, and several times between that date and the 1935 tide, ''about five different times.''

One witness had seen the water in Rice's house about 1929, and in Salyer's house at different times. In 1928 or 1929 the tide was about the same as in 1936; the water got into the Salyer and Rice properties in 1927, and this flood caused ''part of the damage'' to the properties, as he had fixed the damage. Another, who lived in the neighborhood all his life, testified that he had seen the water on these properties so many times that he couldn't tell when it was first flooded, but it had been ''five or ten years ago.'' Other witnesses for appellee testified to the same effect. Nearly all the witnesses testifying for appellees admitted that their estimated damage, that is, the difference in the market value of the various properties before and after the flood or floods of 1935, was due in part to the damages which had occurred in previous years, as some express it, ''when the water got into the property the first time, the property began to decrease in value.''

A review of the proof shows nothing whatever to indicate other than a permanent structure. The proof by appellant, beyond a doubt, so shows. There is no proof to indicate that the structure was either built or changed (as in the Caudill Case, supra) or any improvements made upon the bridge or fill within ''the five years last past.'' This suit was practiced throughout upon the theory that the bridge in question was so constructed originally that drift was permitted to lodge against the bridge, and gradually year after year, causing a filling up of the creek bed above the bridge. This, according to the proof, had been occurring for many years prior to the 1935 tide, and not only this, the damage to appellees' properties had been started and growing each year for more than five years prior to the institution of the suit. There is a total absence of proof necessary to bring the case within the class mentioned in point 2, in the quotation from the Bennett Case, supra.

The court's instruction was improperly predicated on the theory that since appellees confined their testi-

mony to damages occurring during the 1935 flood, "and within five years" before the filing of the suit, they were entitled to recover on the basis of a permanent damage, that is, the difference in value of the properties immediately before and after the injury, by the 1935 tide. Nor was the instruction proper, had the case then been pitched on the right to recover on the ground that the structure in the first instance was negligently or unlawfully built, or thereafter maintained. An instruction under such a state of facts, where there were recurring injuries, should measure the damage by the diminution in the value of the use and enjoyment of the property, or its rental value. Such damages may be recovered as often as an injury occurs under such circumstances, provided suit be instituted within five years of the alleged injury. Louisville & N. R. Co. v. Conn, supra. The case here was not practiced, nor such proceedings indulged as would permit recovery, since all proof was directed to the difference in the fair market value of the land.

In the third case it appears that Hester was a tenant of A. M. Salyer, living at the time of the alleged injury in the house on the same lot, for which Salyer sought damages in the above case. He had moved into the property in May, 1934, and continued to live there after that time. His suit sought recovery for injury to gardens, and personal property, some of which was damaged and some destroyed, by the overflow of water. The jury returned a verdict in his favor, and from judgment following the verdict appellant moves for an appeal.

Hester first pleaded that the appellants in constructing and repairing the bridge did the work in such a negligent manner as to impede the flow of water, "when said stream was swollen from heavy rains." That the said negligent and careless work caused the water to overflow during the first days of April, 1935, during the five years next before the filing of his petition. He states that appellant drove piling in such a negligent way and in such numbers that it would not allow drift to pass under the bridge, thus backing the water up and damaging his property.

In reply he alleged that:

"The bridge is a wooden structure built of decaying material, and same has been and is being re-

paired by placing sound timbers in place of rotten timbers, and that same has been done and such repairs made by defendant since *taken* over control and ownership of said road, and within the last twelve months.''

Plaintiff, however, fails to allege that such repair or placing of sound timbers in place of rotten timbers had been done in a negligent or unskillful manner, or in such a way as to cause overflow or resulting damage or injury to his property. Conceding that the two pleadings, taken together, might be construed to state a cause of action, differing from the causes in the companion cases, we are convinced after reading all the testimony that it is nowhere shown that there had been any repairs made, negligently or otherwise, or any replacement of timbers at any time since the bridge was originally constructed, or taken over from the Big Sandy by appellant.

This case proceeded, as in the Salyer and Rice cases, on the theory that the structure was permanent. Hester, except in so far as the injury to and the value of his property was concerned, stood on the same proof as was introduced in the Salyer and Rice cases, and no other. Testifying for himself, as did others, as to the condition which caused his damage, he offered no proof tending to show that the structure was not permanent, and the appellants clearly proved, in every sense in which the words are ordinarily used, that it was a permanent structure. While appellant was the tenant, and not the owner, he stood in the same attitude in regard to his right of recovery as did his landlord.

The appellee testifying said that the water got up into his house several times in 1934. Speaking of the 1935 flood, it seems there were two, if not three, high tides in March, April, and May. He said the water had gotten into the house so many times he ''couldn't remember'' the dates. ''It has been in the house seven or eight times since I have been there.''

The rule is well established that where damages result from what is known as a permanent structure properly built, there must be a single recovery and to be sought within the statutory period. Louisville & N. R. Co. v. Bennett, 196 Ky. 679, 246 S. W. 121; Honaker v. Chesapeake & O. Ry. Co., 209 Ky. 576, 273 S. W. 81, 82.

In the latter case we wrote that in a case where a purchaser of land sought damages for overflow, when he had knowledge of the conditions at the time of purchase, he was not entitled to recovery after the statutory period.

> "The reason for the rule denying recovery to a person who has purchased land, knowing of the liability of overflow, where the obstruction is permanent, and there must be one recovery for all, is that such purchaser, knowing conditions and knowing that no repair work can be required of the railroad, is presumed to take these facts into consideration in making his purchase."

City of Richmond v. Gentry, 136 Ky. 319, 124 S. W. 337, 136 Am. St. Rep. 255; Louisville & N. R. Co. v. Lambert, 110 S. W. 305, 33 Ky. Law Rep. 199; Stickley v. Chesapeake & O. Ry. Co., 93 Ky. 323, 20 S. W. 261, 14 Ky. Law Rep. 417; Hutcherson v. Louisville & N. R. Co., 247 Ky. 317, 57 S. W. (2d) 12.

The same rule is applicable to one who rents property. Any liability of the appellant in this case grows out of and is predicated upon its failure to perform a duty and obligation to adjoining land owners, and the damage it is subjected to is measured by the depreciation in market value, or diminution in the use or rental value of the land affected by the alleged improper construction. For this there was a cause of action in the landowner, and he sought to recover damages for the injury to his land. The appellee here was not the landowner, but a tenant who has voluntarily occupied the property, subject as it was to the danger of overflow, as is clearly established by the proof, cannot in this way acquire a right of action. If he, or other tenants of the property owner, could sue, as he has done, the defendant would be at the mercy of all tenants who chose to place their personal property in such an exposed position, and appellant might be compelled to pay many times more than the original value of the real property to those whose property was in no wise affected originally by its act. Chicago & A. R. Co. v. Smith, 17 Ill. App. 58; Toledo, W. & W. Ry. Co. v. Hunter, 50 Ill. 325. It must be presumed that in renting the property, the condition existing. and known to both parties to the contract, the liability to injury by

overflow was taken into consideration. Pence v. City of Danville, 147 Ky. 683, 145 S. W. 385, and cases cited therein.

Since here the structure was clearly proven to have been of a permanent nature, and so treated by all parties, the reasons for reversal set out in the Rice and Salyer cases apply here, and it is our conclusion that the court should have granted appellant's motion for a peremptory instruction, in this and the two other cases.

Motion for appeal granted in the Hester case, and in all three cases judgments are reversed and causes remanded for further proceedings consistent herewith.