## Fitzhugh et al v. Louisville & N. R. Co.

June 22, 1945.

510

Robert B. Hardison for appellants.

H. T. Lively, G. Sam Milan, and J. P. Hamilton for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

This is an action for damages for injury to plaintiff's land and crops by the casting of water through a railroad culvert upon it, and for a mandatory injunction for the removal or closing of the culvert. By agreement the case was heard in its entirety by the judge. He rendered judgment for the defendants, and the plaintiffs appeal.

The railroad was constructed about the year 1882, running north and south through the lands of plaintiff's father, from whom they inherited it when he died in 1932. It appears that a depot was erected nearby about 1901, and a side track on a fill was extended about 1922. At this time the culvert about which complaint is made was put through the widened fill. The maps and sketches used and filed by the witnesses are not in the record before us. Their absence makes it impossible to understand much of the testimony. But it is quite apparent that the evidence sustains the description given by the judge in an opinion forming the basis of the judgment. The natural drainage of the area is in a westerly direction and it would seem that before the railroad was constructed, and were it not there now, the water would spread out on and over the lands of the plaintiffs on the west side of the track before reaching a shallow creek or dry run about like it does now. There are three ravines east of the track and, as we understand the evidence, the culvert channels the water from one of them under the railroad. Other culverts take care of the other drainage. The court based his conclusion upon the natural condition and the fact, as he found it to be, that all drainage through this culvert from east of the railroad is less than one-fourth of one per centum of the water entering upon the bottom lands where it is dissipated. We gather from the evidence that the collection of water through the culvert as an artificial channel was so negligible that its concen-

tration did not materially change the natural condition or cause any damage. The injunction was denied because the culvert was found to be a permanent structure, properly installed.

Many points of law are argued by the appellants. Among them are that the defenses constituted negative pregnants, hence the pleadings are bad, and that the judge based his conclusion upon his personal view of the premises.

The defenses interposed are several: General and special demurrers, motions, denials, admissions and affirmative pleas of limitation and prescription. But we cannot agree with counsel that the answer "has most of the faults, flaws and vices that a pleading ought not to have;" or that it is "evasive, prolix, indefinite, duplicitous, self-contradictory and not perspicuous;" or that it is so full of negative pregnants as to indicate quintuplets. Under our practice, there is nothing legally inconsistent in making several affirmative defenses, admissions and denials without pleading them in the alternative, even though they appear inconsistent from the literary standpoint. It seems to us the pleadings were skilfully and properly drawn.

The criticism of the judge viewing the premises comes too late, for the record shows the parties agreed that he should try the case without a jury and should personally view the situation, and that he was accompanied by the attorneys for both sides when he did so. Of course, it would not be proper without a definite agreement to that effect for a judge to base his finding alone upon what he saw and to ignore the testimony of the witnesses, but inspection of the premises by the court is permissible to enable him to understand and apply the evidence. 53 Am. Jur. Trial, sec. 1128; 64 C. J. 1202; Owings v. Talbott, 262 Ky. 550, 90 S. W. 2d 723. Presumably in a case like this there is perfect accord between the true testimony and the actual condition seen by the court.

In the Owings case, which involved the issue of divisibility of lands, where the court without notice or knowledge of the parties had viewed the property, we considered the evidence in the case without knowing the extent of the judge's view. In Gray v. Gray, 197 Ky.

777, 248 S. W. 172, we approved the procedure which was exactly like in the instant case, the judge having read the evidence, then viewed the property upon the request of the parties and in their company. In Wilcox v. Lee, 264 Ky. 65, 94 S. W. 2d 294, we expressed the opinion that the inspection of the premises was a matter within the court's discretion, just as sec. 318 of the Civil Code of Practice authorizes the court in his discretion to let or direct a jury ''to have a view of real property which is the subject of litigation, or of the place in which any material fact occurred.'' We observed there as we may here that the recitation in the judgment of what the judge saw has no materiality, for it is but a statement of facts brought out, in part at least, in the testimony.

A view of the situation in a case of this kind, covering as it does a general panorama of the watershed, hills, ravines and general drainage, most certainly gives to the trier of facts, whether a judge or a jury, a better understanding of the evidence. Photographs would be helpful, but there were none produced here. Where it is convenient and practical, a personal view is common sense procedure. If there is any rule of law against using common sense in the trial of a lawsuit, the writer does not know about it. All procedural rules, as well as substantive law, are supposed to be founded upon it and upon what is fair and just. The judgment cannot be reversed upon this ground.

Concerning the permanent character of the structure, it is 26 inches in diameter and runs 25 or 30 feet through the railroad fill. Of course, it could be stopped up at the entrance at little expense as the appellants contend. But this would result in obstructing the natural flow and cause a lake or perhaps temporary flooding of property belonging to other persons, for which it would seem the Railroad Company would have to respond in substantial damages. There is evidence that in some manner, which is not clear because of the absence of the plats, a way might be cut through a hill or elevation which would permit the water to flow down the east side of the railroad into a creek, at a cost of at least $500. In Dugan v. Long, 234 Ky. 511, 28 S. W. 2d 765, 766, we formed a condensed definition of a permanent structure in this connection ''as one which may not be readily remedied, removed, or abated at a reasonable expense, or one of a dur-

able character evidently intended to last indefinitely, costing as much to alter as to build it in the first instance.'' And in that opinion we pointed out that a railroad fill or embankment which obstructed a water course met the definition.

When the whole situation is regarded—the character of the structure, the negligible increase in the volume of water caused to be concentrated at the exit of the culvert instead of permitting it to flow in the naural course over a wide space onto the area, and the cost in the way of damages to other people's property by stopping it up, or even the expense of cutting a new channel east of the railroad—we cannot say as a matter of law that the court reached an erroneous conclusion that it is a permanent structure in the legal sense. Had there been a jury trying the case, it might have been proper to submit the issue as to the character of the structure, and it might well have found it to be permanent, considering the several factors we have stated. Louisville & N. R. R. Co., v. Whitsell, 125 Ky. 433, 101 S. W. 334; Chesapeake & O. Ry. Co. v. Blankenship, 158 Ky. 270, 164 S. W. 943. It is quite elementary that where the law and facts are submitted to the judge, he is clothed with all the functions of a jury, and his findings upon disputed evidence will be regarded as the verdict of a properly instructed jury and will not be set aside for any less reason than a verdict rendered in such a case. Hodges v. Daviess County, 285 Ky. 508, 148 S. W. 2d 697; Rybolt v. Futrell, 296 Ky. 158, 176 S. W. 2d 269.

Being a permanent structure, the liability of the company for whatever damages may have resulted from its construction was an entirety and the right of action accrued when it was completed. The recovery must have been in one action brought within five years. Ky. Rev. Stats. 413.120; Louisville Hydro Electric Co. v. Coburn, 270 Ky. 624, 110 S. W. 2d 445; Chesapeake & O. Ry. Co. v. Saylor, 272 Ky. 171, 113 S. W. 2d 1152. The case of Louisville & N. R. R. Co. v. Cornelius, 111 Ky. 752, 64 S. W. 732, in which the facts were like those here, and it was held that actions could be maintained for recurring damages, is distinguishable, as pointed out in Hay v. City of Lexington, 114 Ky. 665, 71 S. W. 867, as the action was based upon negligent construction of the culvert. So regardless of the appellants' contention of a

514

tort and material damage, the action was barred by the statute of limitations.

The judgment is therefore affirmed.